Randy Dale MAYO,
Petitioner–Appellant,

v.

James A. LYNAUGH, Director, Texas Department of Corrections, Respondent–Appellee.

No. 89–1127.

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1990.

**684**

Before RUBIN, KING, and HIGGINBOTHAM, Circuit Judges.

ON PETITION FOR REHEARING

ALVIN B. RUBIN, Circuit Judge:

Randy Dale Mayo, a Texas state prisoner sentenced to death by lethal injection, requests rehearing by this panel of his claim that the jury was unconstitutionally prevented from considering all of the mitigating evidence he presented at the sentencing phase of his trial, in violation of *Franklin v. Lynaugh*[1] and *Penry v. Lynaugh*.[2] Mayo argues that, contrary to this panel's conclusion in initially denying rehearing, he did not procedurally default his *Penry* claim because the state itself had waived the procedural default argument. For the reasons stated below, we agree with Mayo's argument, and reverse and remand for further proceedings in accordance with this opinion.

I.

The facts regarding earlier proceedings in this case are set forth in our previous opinions, and we will only summarize them. In January 1985, Mayo was convicted by a Texas jury of capital murder while in the course of committing an aggravated sexual assault. After a separate sentencing hearing, the jury returned affirmative answers to the two special issues submitted pursuant to the Texas capital sentencing statute,[3] and the court sentenced Mayo to

Robert L. McGlasson, Austin, Tex. (court appointed), for petitioner-appellant.

William C. Zapalac, Asst. Atty. Gen. and Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

1. 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988).

2. —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

3. Tex.Crim.Proc.Code Ann. art. 37.071(b) (Supp. 1990) states that:
   On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the de-

death by lethal injection. His conviction and sentence were affirmed on direct appeal to the Texas Court of Criminal Appeals,[4] and the trial court denied his subsequent motions for collateral review.

Two days before the date the trial court had set for his execution, Mayo filed a motion for a stay of execution and for a writ of habeas corpus in the United States District Court for the Northern District of Texas, San Angelo Division, and that court stayed the execution. After two evidentiary hearings before a United States Magistrate, both conducted after new counsel had been appointed at Mayo's request, the magistrate recommended that the writ be denied. However, after the state had expressly waived its right to seek exhaustion in state court, the district court allowed Mayo leave to file a second amended petition asserting a claim based on *Franklin v. Lynaugh*,[5] this circuit's decision in *Penry v. Lynaugh*,[6] and the Supreme Court's grant of certiorari in *Penry v. Lynaugh*.[7] Mayo argued both that the Texas capital sentencing statute was facially unconstitutional and that it was unconstitutional as applied to his case, likening his presentation of mitigating evidence at the sentencing phase of trial to the circumstances of *Penry* and distinguishing the circumstances of *Franklin*. After conducting a hearing to determine whether Mayo had additional evidence regarding mitigating circumstances, the district court rejected his challenge, adopted the findings and conclusions of the magistrate, denied the writ of habeas corpus, and vacated the stay of execution.

On appeal, this court reviewed the district court's disposition of Mayo's *Franklin-Penry* claim, noting Mayo's contentions that "the jury was precluded from giving effect to all the mitigating evidence submitted during the sentencing phase of his trial" and "that the Texas capital punishment scheme is unconstitutional because the jury is prevented from considering mitigating evidence except on the issues of the deliberateness of the murder and the probability of future dangerousness."[8] In an opinion released four days after the Supreme Court's decision in *Penry*, we stated "[w]e are bound by the precedents of this circuit that have upheld the constitutionality of the Texas statute, and therefore we must deny relief on this claim. That the Supreme Court has granted certiorari in a particular case does not allow us to grant relief to other petitioners who raise a similar claim."[9]

Both parties petitioned for rehearing on the basis of the Supreme Court's decision in *Penry*. Although we modified our opinion accordingly, we denied the petition for rehearing on two bases. We first observed that Mayo's failure to raise his claim at trial constituted a procedural default under Texas law, requiring him to demonstrate cause-and-prejudice to redeem the claim; we further noted that circuit precedent on the issue of cause-and-prejudice for failure to raise a *Penry* claim at trial had not been consistent.[10] "Assuming, however, without deciding that the merits of the claim [we]re before us," we also denied relief on the basis that Mayo had not sufficiently articulated "how the jury was unable to express its reasoned moral response and give effect

ceased was unreasonable in response to the provocation, if any, by the deceased.
The parties agreed that the special issue three was not raised by the evidence, and so that question was not submitted to the jury.

4.  *Mayo v. State*, 708 S.W.2d 854 (Tex.Crim.App. 1986) (en banc).

5.  487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988).

6.  832 F.2d 915 (5th Cir.1987), *aff'd in part and rev'd in part*, —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

7.  —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988) (granting certiorari in part).

8.  882 F.2d 134, 140 (5th Cir.1989).

9.  *Id.* at 140–41 (citations omitted).

10.  883 F.2d 358, 359 (5th Cir.1989) (citing *King v. Lynaugh*, 868 F.2d 1400, 1406 (5th Cir.) (Rubin, J., concurring), 1408 (Johnson, J., concurring), *cert. denied*, —— U.S. ——, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989)).

to his mitigating evidence." [11]

Mayo's second petition for a rehearing argues for the first time that his *Franklin-Penry* claim is not procedurally barred because the state waived the defense, and argues anew that his claim is entitled to relief on the merits under *Franklin* and *Penry*. The state opposes this petition. While recognizing the interest in tempering collateral challenges to capital sentences,[12] we grant rehearing to correct our previous opinions.[13]

## II.

Mayo argues that the state waived the issue of procedural default in two ways: first, by explicitly waiving exhaustion of Mayo's *Franklin-Penry* claim during argument before the district court, the state also implicitly waived the issue of procedural default; second, by waiting until its own petition for rehearing to argue that Mayo had procedurally defaulted his claim, the state effectively waived the issue.

■ Mayo's first argument asserts that whatever the correct view of the law, the state perceived that by waiving exhaustion it was also waiving the issue of procedural default, and that the state's intent should govern our construction of the waiver. The two issues, however, are different;[14] indeed, the argument that Mayo's claim has been procedurally defaulted would

maintain that he had failed to comply with the Texas procedural rule requiring objection at trial,[15] and that therefore all state (and federal) review of his claim was foreclosed, not ripe for exhaustion.[16] The state did not implicitly waive procedural default by exercising its conditional authority to waive exhaustion.[17]

■ This circuit, however, has consistently held that a state waives a procedural-bar argument by failing to present the issue in district court.[18] In this case, the state did not raise its procedural default argument until it filed a petition for rehearing of our decision on appeal. The state argues that it has made no waiver because its defense was fatally impaired by Mayo's failure to raise the *Penry* claim in state court. Such an exception, of course, would protect all waivers of procedural default defenses, and would allow the state to raise the defense at any juncture it chose. The state, however, does not request such a broad rule. Instead, it argues that it is excused because *Teague v. Lane*[19] held for the first time that federal habeas review is precluded for a claim that was not raised in state court if it is clear that the state court would have imposed a procedural bar and refused to consider the merits of the claim.

The Court in *Teague* merely observed that its imposition of the procedural default

11. 883 F.2d at 359–60.

12. *See Penry,* 109 S.Ct. at 2944.

13. *See* Fed.R.App.Proc. 40(a); *see, e.g., Bridge v. Lynaugh,* 863 F.2d 370 (5th Cir.1989) (granting second rehearing to find absence of legal cause for petitioner's procedural default); *Sun Oil Co. v. Burford,* 130 F.2d 10, 13 (5th Cir.1942) (court may grant second petition for rehearing to prevent injustice), *rev'd on other grounds,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

14. *See* 1 J. Liebman, Federal Habeas Corpus Practice and Procedure § 5.3(b), at 45–46 n. 7 (1988).

15. *See Mayo v. Lynaugh,* 883 F.2d at 359, (citing *Selvage v. Lynaugh,* 842 F.2d 89, 93 (5th Cir. 1988)).

16. *See, e.g., Engle v. Isaac,* 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570–71 n. 28, 71 L.Ed.2d 783 (1982).

17. *Cf. Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

18. *See, e.g., Reddix v. Thigpen,* 805 F.2d 506, 512 (5th Cir.1986); *Wiggins v. Procunier,* 753 F.2d 1318, 1321 (5th Cir.1985); *Washington v. Watkins,* 655 F.2d 1346, 1368 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982); *Smith v. Estelle,* 602 F.2d 694, 708 n. 19 (5th Cir.1979), *aff'd,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *LaRoche v. Wainwright,* 599 F.2d 722, 724 (5th Cir.1979); *see also Granberry,* 481 U.S. at 131, 131 n. 3, 107 S.Ct. at 1673, 1673 n. 3; *Engle v. Isaac,* 456 U.S. at 125 n. 26, 102 S.Ct. at 1570 n. 26; *Estelle v. Smith,* 451 U.S. 454, 468 n. 12, 101 S.Ct. 1866, 1875 n. 12, 68 L.Ed.2d 359 (1981); *Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980).

19. —— U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

rule was consistent with the requirement of *Harris v. Reed* [20] that the last state court rendering a judgment must have "clearly and expressly" rested its judgment on a state procedural bar before a federal court may bar consideration on that ground, since the *Harris* rule assumed that a state court has had the opportunity to address the claim.[21] Such a distinction has little purchase in the present situation: the issue here is not the opportunity afforded state courts, but the opportunity afforded the respondent to raise the issue, and it cannot be disputed that the state could have responded to Mayo's *Franklin-Penry* claim by raising the issue of procedural default before the federal district court. Moreover, the distinction observed in *Teague* was scarcely so new as to excuse the state's delay. The need to distinguish *Harris v. Reed* first arose on the day that *Harris* and *Teague* were both announced, and *Teague* cited *Engle v. Isaac* [22] for the proposition that a procedural default rule may be applied to a claim that has never been raised in state court.[23] Finally, although the *Teague* decision was rendered before Mayo filed his opening appellate brief, the state's first suggestion of procedural default came in its petition for rehearing after this court had rendered its first opinion.

The state also cites our decision in *Wiggins v. Procunier* [24] in support of the argument that if a procedural bar can be "raised at any point in the district court proceedings," [25] it can be raised at any point in the appellate proceedings, including a petition for rehearing. But although it may be permissible to allow a district court any opportunity to evaluate the alleged procedural default,[26] the same flexibility cannot be posited to allow raising a procedural default defense at any juncture in proceedings.[27]

Although Mayo in turn has raised the issue of the state's waiver of the procedural default issue at a later juncture than was necessary, the state's briefs do not suggest that he has therefore waived his waiver argument. The blame for the lack of consideration of the procedural default issue in the district court and on the initial appeal must rest with the state in any event, and no significant burden is imposed by the delay from the first, mutually requested consideration of rehearing until this point in the proceedings.[28]

### III.

*Penry* reviewed a sentencing proceeding in which the trial counsel for Penry had presented evidence at a pre-trial competency hearing before a jury and at the guilt-innocence phase of the trial suggesting that Penry suffered from organic brain damage and moderate retardation, was frequently beaten by his mother as a youth, and had a variety of learning and behavioral dysfunctions.[29] Penry's counsel also objected to the proposed jury charge at the sentencing phase, arguing in relevant part that the charge failed to "authorize a discretionary grant of mercy based upon the existence of mitigating circumstances," "fail[ed] to require as a condition to the assessment of the death penalty that the State show beyond a reasonable doubt that any aggravat-

20. —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

21. *Teague,* 109 S.Ct. at 1068–69 (citing *Harris,* 109 S.Ct. at 1042–45, 109 S.Ct. at 1046–48 (O'Connor, J., concurring)).

22. 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

23. 109 S.Ct. at 1068 (citing *Engle,* 456 U.S. at 113–14, 117, 124–35, 102 S.Ct. at 1564–65, 1566, 1570–76).

24. 753 F.2d 1318 (5th Cir.1985).

25. *Id.* at 1321.

26. *But see Smith v. Estelle,* 602 F.2d at 708 n. 19.

27. *See supra* note 18 and accompanying text.

28. *Compare Engle,* 456 U.S. at 125 n. 26, 102 S.Ct. at 15 n. 26 ("waiver of waiver" argument defaulted when both district court and court of appeals evaluated procedural default issue and petitioner failed to present the argument until his brief on the merits before the Supreme Court).

29. 109 S.Ct. at 2941–42; *Penry v. Lynaugh,* 832 F.2d 915, 917 (5th Cir.1987).

ing circumstances found to exist outweigh any mitigating circumstances," failed to instruct the jury that it might take into account all of the aggravating and mitigating evidence submitted during the full trial of the case, and permitted the death penalty in circumstances amounting to cruel and unusual punishment.[30]

The Supreme Court held that the three special issues submitted to the jury at the sentencing phase pursuant to the Texas capital sentencing statute did not allow the jury to fully consider and give effect to the mitigating evidence of Penry's mental retardation and abused background. Although consideration of Penry's "deliberateness" in committing the crime, the probability that he would commit future violent criminal acts, and the possibility that he acted in self-defense would allow the jury to consider some aspects of the evidence concerning mitigating circumstances, and despite the fact that defense counsel was free to argue those circumstances to the jury, the Supreme Court concluded that the prosecutor's argument that the jurors must follow the instructions they were given regarding the special issues and the absence of appropriate jury instructions concerning mitigation would have allowed a reasonable juror to believe "that there was no vehicle for expressing the view that Penry did not deserve to be sentenced to death based upon his mitigating evidence."[31]

Mayo's counsel presented eight witnesses at the sentencing phase. Patsy Mayo, petitioner's mother, and Raymond Allison, a friend of the family who had employed Randy and R.T. "Buddy" Mayo, Randy's father, each testified to the traumatic circumstances of Randy's upbringing. Patsy Mayo testified that her husband began beating Randy when Randy was four or five years old, that Randy had suffered several unexplained broken bones, that Buddy had made numerous death threats to her and the children, that Buddy's physi-

cal and verbal abuse of Randy was continuous, and that at the time of the sentencing phase Buddy was in prison for having raped a child. Allison also testified that Buddy Mayo had verbally and physically abused Randy, that all the Mayo children had been removed from their home for several months after Randy's brother reported to school with signs of physical abuse, and that Randy's subsequent criminal acts were probably the result of his home environment. Allison and other witnesses testified to various good works performed by Mayo, his religious faith, and his artistic ability and interest.

As in *Penry*, the mitigating evidence presented was not accompanied by jury instructions that would have allowed a juror to give effect to her conclusion that Mayo was less morally culpable or otherwise undeserving of death because of his family background or personal circumstances.[32] Instead, also as in *Penry*, Mayo's "history of abuse [was] a two-edged sword": [33] the prosecution converted Mayo's "deep-rooted, deep-seated problems" into evidence of future dangerousness, problems that "would stay there for a long time unless we do something about" them. Similarly, pictures introduced to demonstrate Mayo's artistic sensibilities were described by the prosecution as evidencing a fascination with young girls "not unlike" the victim of Mayo's crime. The prosecutor's closing successfully focused the jury's attention on the exclusive relationship between the evidence presented at the guilt-innocence and sentencing phases and the special issues, but the special issues did not afford sufficient opportunity for consideration of the mitigating evidence Mayo offered.[34]

Mayo's circumstances differ from Penry's in two potentially significant but ultimately inconclusive ways. First, Mayo's counsel did not present any evidence that

---

**30.** See 109 S.Ct. at 2942–43.

**31.** *Id.* at 2950.

**32.** *Ibid.* at 2949.

**33.** *Id.*

**34.** Contrast *Russell v. Lynaugh*, 892 F.2d 1205 (5th Cir.1989) (mitigating evidence specifically proffered in context of special issues); *McCoy v. Lynaugh*, 874 F.2d 954, 966 (5th Cir.1989) (same).

Mayo was mentally retarded. *Penry*, of course, did not require evidence of any particular mitigating circumstance. It held that "the jury must be able to consider and give effect to *any* mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime." [35] Indeed, the Supreme Court specifically rejected the argument that Penry's mental retardation amounted by itself to a Eighth Amendment impediment to execution.[36] The appropriate question under *Penry* is simply whether Mayo has presented sufficient "constitutionally mitigating evidence" to warrant additional jury instruction,[37] and we determine that he has.

█ Unlike *Penry*, Mayo's defense counsel expressly waived any objections to the jury charge. The state strenuously argues that timely objection to the proposed jury charge or a request for additional instructions is a predicate for raising a claim under *Penry*. *Penry* itself gives little support to this construction. The Court considered itself to be addressing the question of whether Penry "was sentenced to death in violation of the Eighth Amendment because the jury was not adequately instructed to take into consideration all of his mitigating evidence and because the terms in the Texas special issues were not defined in such a way that the jury could consider and give effect to his mitigating evidence in answering them." [38] Although the Court's description of the rule sought by Penry involved the request for jury instructions,[39] discussion of the important limitations to

the holding left unmentioned the role of objections or requests for instructions, and several statements of the holding likewise omitted any such qualification.[40]

The state suggests that the same reasons that have persuaded this court of the need for contemporaneous objection to preserve a claim under *Batson v. Kentucky* [41] recommend requiring timely objection as an integral part of a *Penry* claim. On rehearing in *Jones v. Butler*,[42] we concluded that "[t]he nature of the [*Batson*] claim requires that it be raised when the strikes are made," because the defendant must first make a prima facie showing, the state must come forward with a neutral explanation for challenging black jurors, and the trial judge must then evaluate the state's explanation. The inquiry is essentially one of fact, dependent on credibility, and the passage of time would diminish the prosecutor's reconstruction of his reasons for striking a venireperson and the judge's evaluation of the juror.[43] While we also suggested that contemporary objection better allowed remedy before trial by seating the wrongfully struck venireperson,[44] our decision necessarily rested primarily on the nature of the claim.

█ Unlike a *Batson* claim, a *Penry* claim does not require a contemporary explanation by the prosecution or a fact-laden evaluation of pre-trial conduct, but instead focuses on the mitigating evidence presented, the conduct of the sentencing phase, and the instructions provided the jury pursuant to the Texas capital sentencing stat-

---

**35.** *Id.* at 2951 (emphasis added).

**36.** *Id.* at 2954–58.

**37.** *Contrast DeLuna v. Lynaugh*, (5th Cir.1990) (deliberate failure of trial counsel to introduce mitigating evidence, combined with absence of compelling "kind and quantum" of mitigating evidence offered on collateral review, does not warrant relief under *Penry*) modifying 890 F.2d 720 (5th Cir.1989); *McCoy v. Lynaugh*, 874 F.2d at 966 (no mitigating evidence offered during sentencing phase of trial); *King v. Lynaugh*, 868 F.2d 1400, 1405 (5th Cir.1989) (per curiam) (evidence on drug dependency presented on collateral review that was found not credible by state habeas court, coupled with allegation of disadvantaged youth, does not present sufficient case

for diminished culpability to support procedurally defaulted *Penry* claim).

**38.** *Id.* at 2943–44.

**39.** *Id.* at 2947.

**40.** *Id.* at 2951.

**41.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**42.** 864 F.2d 348, 368–71 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).

**43.** *Id.* at 369–70.

**44.** *Id.* at 370.

ute.[45] Contemporaneous objection would not initiate a finely-tuned procedure that might repair an otherwise defective trial, but rather would confront the limited, mandatory terms of the Texas statute in an attempt to repair the sentencing phase of trial alone. Mayo's counsel satisfied the prerequisites of the claim by offering mitigating evidence at the sentencing phase. Although it may frequently be the case that timely enforcement of state procedural bars will effectively require contemporaneous objection in order to preserve a *Penry* claim for review by state and federal courts,[46] the nature of the claim itself does not duplicate that predicate in the absence of a tenable procedural default argument.

## IV.

For the foregoing reasons, we GRANT the motion for rehearing, REVERSE the district court's denial of a writ of habeas corpus, REMAND for further proceedings consistent with this opinion, and revise those portions of our previous opinions [47] that would be inconsistent with this opinion.

---

**45.** 109 S.Ct. at 2948–51.

**46.** *See, e.g., Fierro v. Lynaugh,* 879 F.2d 1276, 1281–82 (5th Cir.1989); *King v. Lynaugh,* 868 F.2d at 1405; *but see id.* at 1407 (Rubin, J.,

concurring) (citing *Williams v. Lynaugh,* 837 F.2d 1294, 1296 (5th Cir.1988)).

**47.** 883 F.2d 358 (5th Cir.1989); 882 F.2d 134 (5th Cir.1989).