Gary GRAHAM, Petitioner–Appellant,

v.

James A. COLLINS, Director Texas Dept. of Criminal Justice, Institutional Division, Respondent–Appellee.

No. 88–2168.

United States Court of Appeals, Fifth Circuit.

March 7, 1990.

Douglas M. O'Brien, Houston, Tex., for petitioner-appellant.

Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

ON REMAND FROM THE SUPREME
COURT OF THE UNITED STATES
Before REAVLEY, KING and
JOLLY, Circuit Judges.

REAVLEY, Circuit Judge:

We have been directed to revisit this case by the Supreme Court, which vacated our prior decision, reported at 854 F.2d 715, and remanded for further consideration in light of *Penry v. Lynaugh,* —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The narrow issue we reach on remand is whether under the Texas capital sentencing system a jury is able to consider and give effect to youth as a mitigating factor without special instructions. We conclude that a jury is unable to do so and therefore vacate Graham's capital sentence.

## I.

In remanding this case, the Supreme Court neither expressed nor suggested disagreement with any part of our prior opinion other than that relating to Graham's argument that the Texas statutory sentencing procedure does not allow the jury to consider fully the relevant mitigating circumstances, which is discussed in section IIB of that opinion. Accordingly, with the exception of section IIB, we reinstate our prior opinion.

## II.

### B.

■ Capital punishment jurisprudence has progressively refined the constitutional boundaries within which a sentencing jury may impose the death penalty. The general contours of those limits permit imposing a sentence of death only when the crime involves statutorily enumerated aggravating circumstances and after a jury has been able to consider and to give effect to any mitigating circumstances. *See Eddings v. Oklahoma,* 455 U.S. 104, 110–12, 102 S.Ct. 869, 874–75, 71 L.Ed.2d 1 (1982); *Gregg v. Georgia,* 428 U.S. 153, 195–97, 96 S.Ct. 2909, 2935–36, 49 L.Ed.2d 859 (1976). This structure limits the imposition of the death penalty to egregious circumstances and meets the Eighth Amendment requirement of "an individualized assessment of the appropriateness of the death penalty." *Penry,* 109 S.Ct. at 2946.

In *Jurek v. Texas,* 428 U.S. 262, 276–77, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976), the Supreme Court upheld the Texas capital sentencing system against broad constitutional attacks. However, in *Penry,* the Court narrowed the circumstances in which

the Texas statute meets the requirements of the Eighth and Fourteenth Amendments. *See Penry*, 109 S.Ct. at 2947–52.

■ Under the Texas system, a jury sentencing a defendant found guilty of murder under aggravated circumstances must answer the following questions:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Tex.Code Crim.Proc.Ann. art. 37.071(b) (Vernon Supp.1990). If the jury unanimously answers "yes" to each question submitted, the trial court must sentence the defendant to death. *Id.* art. 37.071(c)-(e). If any question is answered in the negative, the defendant receives a life sentence. *Id.* art. 37.071(e).

The Texas statute's constitutionality has repeatedly turned on the issue of "whether the enumerated questions allow consideration of particularized mitigating factors." *Jurek*, 428 U.S. at 272, 96 S.Ct. at 2956. The statute withstood constitutional attack in *Jurek*, because "three Justices concluded that the Texas Court of Criminal Appeals had broadly interpreted the second question—despite its facial narrowness—so as to permit the sentencer to consider 'whatever mitigating circumstances' the defendant might be able to show." *Lockett v. Ohio*, 438 U.S. 586, 607, 98 S.Ct. 2954, 2966, 57 L.Ed.2d 973 (1978) (quoting *Jurek*, 428 U.S. at 272, 96 S.Ct. at 2956 (Stevens, J., plurality)).

In *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), the Court again considered the constitutionality of the Texas system. Franklin claimed his Eighth Amendment rights were violated by the trial court's refusal to instruct the jury on the effect of mitigating evidence under the statute. The case produced a plurality opinion, with Justices O'Connor and Blackmun concurring in the result. Justice White, writing for the plurality, stated that "[i]t is the established Texas practice to permit jury consideration of ' "whatever mitigating circumstances" the defendant might be able to show' in capital sentencing." 108 S.Ct. at 2326 (White, J., plurality). He also noted that the only mitigating evidence Franklin offered—his good prison record—could be considered in response to the future dangerousness question. *Id.* at 2329. Justice White further indicated that a state may "channel jury discretion in capital sentencing in an effort to achieve a more rational and equitable administration of the death penalty," *id.* at 2331,[1] and ultimately concluded that the trial court's refusal to issue special instructions did not violate the Eighth Amendment, *see id.* at 2332.

In her concurrence, Justice O'Connor took issue with the plurality's suggestion that a state could restrict a jury's ability to consider mitigating evidence and underscored the importance of allowing the jury to give effect to mitigating evidence that is "relevant to the defendant's character or background or the circumstances of the offense." *Id.* at 2332–33 (O'Connor, J., concurring). However, Justice O'Connor concluded that the Eighth Amendment did not require special instructions in that case because the evidence of Franklin's good prison disciplinary record could be considered and given effect in answers to the question on future dangerousness. *Id.* at 2333.

The *Penry* Court, however, did find that the statute could be unconstitutionally applied in some circumstances. Like Franklin, Penry had argued that his Eighth Amendment rights were violated by the trial court's refusal to instruct the jury on the effect of mitigating evidence under the

---

1. Chief Justice Rehnquist and Justices White, Scalia, and Kennedy adhered to this view in the *Penry* dissent, penned by Justice Scalia. *See Penry*, 109 S.Ct. at 2967–69.

statute. However, Penry had offered evidence of his mental retardation and abused childhood as factors mitigating against the imposition of the death penalty, rather than simply a good prison record. *Penry,* 109 S.Ct. at 2952. The distinction between *Franklin* and *Penry* rested upon the relevance of Penry's evidence to his background and its reflection on his moral culpability.

Justice O'Connor, writing for the majority, stressed that "the punishment should be directly related to the personal culpability of the .defendant...." *Id.* at 2951.[2] The Eighth Amendment requires consideration of a capital defendant's background and character " 'because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.' " *Id.* at 2947 (quoting *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring)). In examining the statutory questions that the jury must consider in returning a verdict for death, she found that the jury had insufficient latitude to express its findings regarding culpability. With respect to the first question, Justice O'Connor noted that while the jury was able to consider Penry's mental retardation and abused childhood in answering the questions regarding deliberateness, "[p]ersonal culpability is not solely a function of a defendant's capacity to act 'deliberately.' " *Id.* 109 S.Ct. at 2949. Thus, the mitigating effects of mental retardation

and an abused childhood could not be given full effect in response to this question.

With regard to future dangerousness, the evidence of Penry's mental retardation and abused childhood was viewed as a "two-edged sword." *Id.* One effect of mental retardation is the inability to learn from one's mistakes. Although retardation may diminish blameworthiness, it also makes it more likely that a retarded defendant will be dangerous in the future. A juror could have found both that Penry posed a future danger and that he was less culpable than a person with average intelligence. However, the question provides no vehicle for expressing the finding of reduced culpability. *Id.* The Court also found that the third question provided an inadequate alternative for addressing reduced culpability. *Id.* at 2950. Accordingly, because the evidence was relevant beyond the scope of the special issues, the Court concluded that the statutory questions did not adequately provide the jurors with an opportunity to give a "reasoned moral response" to that evidence. *Id.* at 2952.

We understand the Court's rule after *Penry* to be this: a jury sentencing a capital defendant who provides evidence about his character, his background, or the circumstances of the offense that is relevant to personal culpability beyond the scope of the statutory questions must receive instructions that allow the jury to give effect to such evidence. However, in the *Franklin–Penry* aftermath, we are left with the task of determining which type of evidence mandates special instruction.[3]

**2.** The majority with regard to this issue was comprised of Justices O'Connor and Blackmun and the three *Franklin* dissenters, Justices Stevens, Brennan, and Marshall.

**3.** The Supreme Court has assumed that additional instructions could answer the problem, perhaps by broadly defining "deliberately" in the first jury question. See *Penry,* 109 S.Ct. at 2949 and *Jurek,* 96 S.Ct. at 2956 n. 7. We have great difficulty with that assumption and believe it to be necessary to submit another question in order that the jury might give effect to all mitigating factors. See *State v. Wagner,* 309 Or. 5, 28–29, 786 P.2d 93, 106–07 (1990) (en banc) (indicating that Oregon courts are constitutionally required to add a fourth question

under a statutory scheme similar to that of Texas). If the jury decides that the defendant, after careful consideration, fully intended to take the life of his victim, how can "deliberately" be "defined" to require a negative answer to the inquiry where the jury also decides that an abused and retarded adolescent should not be put to death for his wrong—even though it was certainly committed "deliberately"? See the requested issues in *Franklin,* set forth in 108 S.Ct. at 2324 n. 4. The jury would certainly be confused by instructions that seem to be allowing a "no" answer even when the question itself calls for a "yes" answer. And if the instruction should be given, modifying the plain meaning of the question, and if the jury answers "yes,"

At the outset we note that no procedural bar objection has been raised and that the case has been presented for a decision on the merits. Additionally, although Graham's counsel did not request an additional instruction at trial, such a request is not an element of a *Penry* claim. *Mayo v. Lynaugh*, 893 F.2d 683, 688–90 (5th Cir.1990) (suggestion for rehearing en banc pending).

■ The mitigating evidence that Graham introduced during sentencing included his youth and his difficult childhood. Graham argues this evidence is relevant beyond the scope of the special questions and that, because no additional instructions were given, the Texas statute was unconstitutionally applied in his case. Because of Graham's age, we agree.

Graham was seventeen years old at the time that the murder was committed. His stepfather, Joe Samby, and his grandmother, Erma Chron, testified on his behalf. Samby testified that Graham, who lived and worked with his father, would visit his mother once or twice a week and would help with chores around the house. He also testified that Graham loved his mother, who was currently on medication and was a "nervous type."

Chron testified that Graham began staying with her intermittently, beginning at the age of three, because his mother was hospitalized "at least twenty" times for a nervous condition that Chron classified as mental illness. Graham then went to live with his father at the age of eleven or twelve. Chron further testified that while Graham was living with her, he went to church and school, was never violent, never possessed weapons, and never gave her any problems.

Age has long been considered "one of the individualized mitigating factors that sentencers must be permitted to consider...." *Stanford v. Kentucky*, — U.S. —, 109 S.Ct. 2969, 2978, 106 L.Ed.2d 306 (1989); *see Eddings*, 455 U.S. at 115–16, 102 S.Ct. at 877; *Jurek*, 428 U.S. at 272–73, 96 S.Ct. at 2956–57; *Gregg*, 428 U.S. at 197, 96 S.Ct. at 2936. A jury also must be able

to give effect to "evidence of a turbulent family history" in the capital sentencing of a minor. *Eddings*, 455 U.S. at 115–17, 102 S.Ct. at 877–78.

Moreover, age reflects on moral culpability. In *Thompson v. Oklahoma*, the Court restated "the proposition that less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult." *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 2698, 101 L.Ed.2d 702 (1988) (Stevens, J., plurality); *see id.* at 2708 (O'Connor, J., concurring in the judgment) ("Granting the plurality's other premise—that adolescents are generally less blameworthy than adults who commit similar crimes...."). This conclusion is premised on the notion that "[i]nexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is more apt to be motivated by mere emotion or peer pressure than is an adult." *Id.* at 2699 (Stevens, J., plurality). In sum, "[t]he reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult." *Id.*

The state argues, however, that Graham was not entitled to a special instruction because the evidence of youth and a difficult home life is not relevant beyond the scope of the statutory questions. The state points out that the relevant problems of adolescents—limited abilities to control impulsive behavior, to evaluate the future consequences of their actions, and to appreciate the possibility and finality of death— can be considered in answering the deliberateness question. That, however, does not end the matter, because a jury that found Graham had acted deliberately might also find him less culpable than an adult. If so, the jury would be compelled to answer the issue affirmatively, and it would be unable to give full effect to Graham's mitigating evidence. *See Penry*, 109 S.Ct. at 2949.

how are we to know that the jury actually considered and rejected all evidence mitigating

against the death penalty rather than gave its honest answer to the question that was asked?

The state further argues that all of the mitigating qualities associated with adolescence are squarely addressed by the future dangerousness question. The state notes that any limitations attributable to adolescence are necessarily transitory. It then argues that a juror finding Graham's moral culpability reduced as a result of his youth could have given effect to the evidence by finding that he did not present a danger in the future. This argument, however, ignores the possibility that a juror could find Graham likely to be dangerous in the future but could also conclude that he was less culpable as an adolescent. If so, that juror could not give effect to the finding of reduced culpability in answering the question.[4] The point of *Penry* is not that a special instruction is unnecessary if a jury could give *some* effect to relevant evidence through the statutory questions; rather, a special instruction is required if a jury cannot give *full* effect to that evidence.

The dissent argues that the mitigating value of youth, without more, is fully covered by the two issues of the Texas verdict. Accordingly, he believes that a special instruction was unnecessary because Graham did not argue that his youth was relevant to any issue other than his future dangerousness and because he did not suggest that his crime was in any way attributable to his youth or to any characteristic associated with his youth.

This view is too restrictive. Adolescence alone is a possible mitigating factor against a sentence of death. The jury was entitled to draw on its common experience and consider the mitigating effect of Graham's youth. A juror who concluded that Graham deliberately committed murder and posed a future danger but who also concluded that a punishment of death was less justified for him because of his age was not able to give effect to that judgment. Without special instruction under these circum-

stances, "the jury was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision." *Id.* at 2952.[5]

■■■ The state further contends that even if an instruction was erroneously omitted, that error was harmless. We cannot accept that argument. The risk that a defendant will be sentenced to death in spite of factors that "may call for a less severe penalty" is incompatible with principles of the Eighth and the Fourteenth Amendments. *Lockett*, 438 U.S. at 605, 98 S.Ct. at 2965.

The district court's judgment is reversed, and the death sentence is vacated. The cause is remanded to the district court for further orders.

E. GRADY JOLLY, Circuit Judge, dissenting:

I respectfully dissent from the majority's effectively setting aside the death penalty in this case on grounds of what amounts to the failure of the trial judge, sua sponte, specifically to instruct the jury that it was free to grant mercy solely because of the defendant's youth at the time of the offense.

With respect to Gary Graham's youth as a sentencing factor, the jury was presented with nothing more than the fact that he was seventeen years old at the time he committed the offense. That isolated fact, without further development, does not furnish a base upon which a reasonable juror could rationally conclude that Graham bears less moral culpability than other citizens. *See Kelly v. Lynaugh*, 862 F.2d 1126, 1133 n. 12 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3263, 106 L.Ed.2d 608 (1989).

I do not dispute that age at the time of the offense can be a relevant mitigating factor. *Eddings v. Oklahoma*, 455 U.S.

---

**4.** The third question was not presented to the jury.

**5.** The dissent understands our ruling to mean that "the jury should have been permitted to exercise a discretionary grant of mercy, notwithstanding Graham's moral or personal culpa-

bility, simply because of Graham's youth." However, it is precisely because Graham's youth reflects upon his moral culpability that we believe the Eighth Amendment mandates a jury instruction.

104, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). The reason that youth can be a relevant mitigating factor is the "recognition that minors, especially in their earlier years, generally are less mature and responsible than adults. Particularly 'during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment' expected of adults." *Eddings*, 102 S.Ct. at 877 (quoting *Bellotti v. Baird*, 443 U.S. 622, 635, 99 S.Ct. 3035, 3044, 61 L.Ed.2d 797 (1979)). Youth can mitigate against imposition of the death penalty because a juror could conclude that a defendant who commits a criminal act *attributable to that defendant's youth* is less culpable than a defendant who has no such excuse, and that such a defendant should not receive the ultimate penalty. *See California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring).

As presented in this case, Graham's youth presented no mitigating factor beyond the scope of the special issues. Graham's youth is obviously relevant to the first and second special issues of the Texas statute. In his argument to this court, Graham does not indicate how such evidence had relevance beyond the scope of the special issues. Moreover, during the sentencing phase of his trial, he introduced no evidence that would support such additional relevance. Specifically, Graham's counsel only urged the sentencing jury to consider his youth in deciding the answer to special issue no. 2, whether Graham was likely to pose a continuing threat to society. *See Russell v. Lynaugh*, 892 F.2d 1205 (5th Cir.1989) (Texas statute constitutionally applied when mitigating evidence specifically proffered in context of special issues).

Nor did Graham introduce any evidence to suggest that the murder he committed was in any way attributable to his youth. Furthermore, in his closing argument during the sentencing phase of the trial, Graham's counsel did not even argue that Graham's crimes were attributable to his youth:

> Gary Graham, 17 years old, went on a rage for 7 days. What did he do? He harassed people. He stuck guns in their face[s]. He shot an individual and he killed another individual. What was it in response to? Why did he become so aggressive? What makes an individual go on a rage for 7 days? Drugs? Alcohol? Maybe. Life? Maybe.

In my view, no special instruction is necessary unless there is at least some evidence or argument from which a juror could reasonably conclude that a defendant who commits a criminal act attributable to that defendant's youth is less culpable than a defendant who has no such excuse. *See Penry*, 109 S.Ct. at 2947 (quoting *California v. Brown*, 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring)).

Nevertheless, if a juror, even in the absence of any evidence or argument suggesting as much, were convinced that Graham's moral culpability was somehow reduced because his crime was in some unspecified way attributable to his youth, that juror would surely reason that because youth is by nature a transitory condition, Graham would cease to act violently when he outgrew his adolescence. Such a juror would have been able to give full mitigating effect to the fact of Graham's youth by giving a negative answer to the future dangerousness inquiry of the second special issue.

Furthermore, Graham presented no evidence regarding psychological characteristics of his adolescence and their effects on his perceptions and behavior, and points to no such effects in his arguments to this court. Unlike Penry, Graham has made no attempt to relate these factors to his own situation. Here, if a juror believed, even in the absence of any evidence to support such a belief, that Graham, because of his youth, had a limited ability to control impulsive behavior, evaluate the future consequences of his conduct, and appreciate the possibility and finality of death, that juror was free to give a negative answer to the first special issue as well, whether the defendant acted deliberately and with the reasonable expectation that death would result.

Therefore, in my view, the jury was able, without the need for any special instructions, to take into account all of the characteristics associated with Graham's youth, and give that mitigating evidence full effect, in answering the first and second special issues under the Texas statute.

The question is whether the jury instructions provide the jury with a vehicle for expressing a *"reasoned* moral response" to the mitigating evidence introduced by the defendant. *Penry,* 109 S.Ct. at 2952 (emphasis added). The majority fails to identify in the case before us and on the evidence before us how the jury was unable to make a *reasoned* moral response to the isolated and undeveloped fact of Graham's youth. The majority acknowledges that youth is relevant to the first and second special issues, but believes that the jury should have been permitted to exercise a discretionary grant of mercy, notwithstanding Graham's moral or personal culpability, simply because of Graham's youth. In my view, such a response by the jury in this case, where there is no evidence or argument that Graham's crime was attributable to his youth or that any characteristics of his youth have relevance to his personal or moral culpability beyond the scope of the statutory issues, would not be a *reasoned* moral response, but an *unreasoned* response. I cannot agree with the majority that the defendant has a constitutional right to such unbridled jury discretion. The evidence before the jury simply offered no basis upon which a *reasoned* moral judgment would excuse the death penalty in this case.

Finally, the majority's formulation of the *Penry* rule omits any reference to the Supreme Court's statement that the jury must, *upon request,* be given instructions that allow the jury to give effect to evidence about the defendant's character, background, or the circumstances of the crime that is relevant to the defendant's moral culpability beyond the scope of the special issues. *Penry,* 109 S.Ct. at 2945. Graham's counsel did not object to the jury instructions that were given, nor did he request any additional instructions or a fourth special issue. In my view, a request for instructions is an integral part of a *Penry* claim. *Cf. Mayo v. Lynaugh,* 893 F.2d 683 (5th Cir.1989) (suggestion for rehearing en banc pending) ("Mayo's counsel satisfied the prerequisites of the claim by offering mitigating evidence at the sentencing phase.").

For the foregoing reasons, I believe that Graham's sentencing jury was fully able to give a "reasoned moral response" to the fact of Graham's youth when it answered the special issues of the Texas statute. Because I believe that the Texas statute was constitutionally applied to Graham, I respectfully dissent.