United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 1, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-70040

KEVIN MICHAEL WATTS, A/K/A KEVIN VANN,

Petitioner-Appellant,

versus

NATHANIEL A. QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
Case No. SA-05-CA-1029-OG
_____

Before JONES, Chief Judge, and KING and DAVIS, Circuit Judges.

PER CURIAM:[*]

Petitioner Kevin Michael Watts appeals the district court's denial of his petition for a certificate of appealability ("COA") to pursue his claim for habeas relief from a death penalty. The district court did not err. We deny a COA.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are adequately recited by the district court. See Watts v. Quarterman, 448 F. Supp. 2d. 786,

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

792-95 (W.D. Tex. 2006). In brief, on the morning of March 1, 2002, Watts entered the Sam Won Gardens restaurant in San Antonio, Texas, brandishing a Tec-22 pistol. Before demanding any money, Watts murdered restaurant employees Hak Po Kim, Yuan Tzu Banks, and Chae Sun Shook, shooting them execution-style in the back of the head. He then ordered Hye Kyong Kim, the wife of Hak Po Kim, to retrieve her dying husband's wallet and car keys from his pants pocket. Watts told her to empty the cash register. Holding Mrs. Kim at gunpoint, Watts ordered her into the Kims' vehicle and fled the scene with her. For several hours, Watts sadistically tortured and sexually assaulted Mrs. Kim both in the vehicle and later in his mother-in-law's apartment – at one point allowing his roommate to rape her. Watts himself repeatedly sodomized Mrs. Kim, forced her to ingest narcotics, and attempted to insert the Tec-22 pistol into her vagina. San Antonio Police captured Watts only after he unsuccessfully attempted to escape by ramming the Kims' vehicle into two police cruisers.

Watts was indicted and found guilty of capital murder and was sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence. See Watts v. State, 2004 WL 3218854 (Tex. Crim. App. Dec. 15, 2004) (unpublished). Watts did not seek review in the United States Supreme Court.

His application for a state writ of habeas corpus was denied. See Ex Parte Watts, 2005 WL 2659444 (Tex. Crim. App. Oct. 19, 2005) (unpublished). Watts timely filed a federal writ

2

petition in the district court, which denied habeas relief and refused to grant a certificate of appealability (COA). Watts accordingly filed the instant application for COA with this court.

**STANDARD OF REVIEW**

Watts's right to appeal the denial of habeas relief is governed by the COA requirements of the Antiterrorism and Effective Death Penalty Act of 1996. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 478, 120 S. Ct. 1595, 1600 (2000); Morris v. Dretke, 379 F.3d 199, 203 (5th Cir. 2004). The COA is a jurisdictional prerequisite to review by this court and will not be granted unless the petitioner demonstrates a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282, 124 S. Ct. 2562, 2569 (2004). Because Watts challenges the district court's dismissal of habeas relief on the basis of procedural default, he must show that jurists of reason would find it debatable whether his petition states a valid claim of the denial of a constitutional right and whether the district court was correct in its procedural ruling. See Slack, 529 U.S. at 484, 120 S. Ct. at 1604; Morris, 379 F.3d at 204. The decision to grant a COA is, however, a threshold determination and does not require "full consideration of the factual or legal bases adduced in support of the claim." We instead conduct only "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v.

3

<u>Cockrell</u>, 529 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003). Since this is a capital case, we resolve any doubt surrounding the propriety of issuing a COA in Watts's favor. <u>See</u> <u>Cardenas v. Dretke</u>, 405 F.3d 244, 248 (5th Cir. 2005), <u>cert. denied</u>, __U.S.__, 126 S. Ct. 2986 (2006).

## II. DISCUSSION

In his application, Watts takes issue with two of the district court's adverse rulings. He contends first that the federal court erred because it rejected his contention that the state trial court violated his Eighth and Fourteenth Amendment rights to present mitigating evidence during the penalty phase of his trial. The trial court allegedly excluded certain testimony of Linda Mockeridge, a clinical social worker, chemical dependency counselor, and self-described "mitigation specialist."[1] Second, Watts objects to the court's holding that he procedurally defaulted this claim in the state courts.

The procedural background of these contentions is illuminating. Following the trial's guilt phase, the trial judge held a <u>Daubert</u> hearing outside the presence of the jury during which Mockeridge described her professional qualifications and the

---

[1]Had Mockeridge been allowed to fully testify, Watts asserts that she would have opined on a variety of psychological and environmental factors that negatively affected Watts's childhood development, including sexual molestation, substance abuse, an impaired decisionmaking capacity, and a host of other purportedly mitigating characteristics that he claims would have influenced the jury's decision to punish him with death. <u>See</u> <u>Watts</u>, 448 F. Supp. 2d. at 801.

4

extent of her research into Watts's personal history. She concluded that Watts was likely in a state of drug-induced psychosis at the time of the offense. On cross-examination by the state, Mockeridge admitted that she had been unaware of the legal definition of the phrase "mitigating evidence" before she prepared for Watts's trial; that she had never previously testified in a capital case or been recognized as a mitigation expert; and that her formal training in "mitigation science" consisted only of a three-day seminar conducted by the Texas Defenders Service. The prosecution then objected to the introduction of her testimony. The trial judge nonetheless overruled the objection, stating that Mockeridge would be permitted to testify as an expert, but that the court would not certify her to the jury as an expert in the field of "mitigation science." The trial judge further ruled that a summary chart prepared by Mockeridge that contained various hearsay statements would not be displayed to the jury, and that the prosecution's concerns regarding the chart's nonhearsay contents would be disposed of on a question-by-question basis in open court.

Watts called Mockeridge as a witness during the penalty phase of his trial. As she did during the Daubert hearing, Mockeridge testified before the jury that she had interviewed Watts and certain of his family members and had reviewed his school, jail, and psychiatric records. Based on the assembled data, she stated her belief that Watts had suffered a psychologically traumatizing childhood and that he committed the murders while in

5

a psychotic state.  The prosecution again objected that Mockeridge was being offered as an expert.  In a discussion at the bench, the trial judge accepted defense counsel's explanation that the line of questioning was merely an attempt "to prove up" the witness's qualifications, but admonished Watts's counsel not to elicit any inadmissible hearsay testimony from the witness:

| | |
|---|---|
| THE COURT: | I'm going to overrule the objection. And as I said, in an abundance of caution, I'm going to let her [Mockeridge] testify.  But, again, remember the hearsay issue and the chart issue. |
| MS. TUSSAY-COOPER: | Yes, Your Honor. |
| THE COURT: | And I will sustain the objection then. |
| MS. TUSSAY-COOPER: | All right.  Thank you. |

Watts cites this exchange in support of his contention that the trial judge impermissibly ruled that Mockeridge could not testify as an expert before the jury, and that Watts was thereby deprived of the opportunity to provide crucial mitigation evidence in violation of his constitutional rights.  At that time, however, the record demonstrates that defense counsel understood that the judge was <u>not</u> sustaining an objection to Mockeridge's status as an expert because counsel continued to establish the expert's qualifications <u>without</u> objection from the state. Nonetheless, Watts's counsel neither attempted to elicit any further opinion testimony from the witness nor sought to introduce any properly authenticated copies of the records relied upon by Mockeridge and used in the summary

6

chart.[2]  In short, besides the hypothesis that Watts committed his crimes during a drug-fueled psychosis, defense counsel made no effort whatsoever to introduce any further opinion testimony from Mockeridge.

After the jury was charged, Watts's counsel offered the summary chart and an affidavit-style report authored by Mockeridge as a bill of exceptions, which was accepted by the court.  The trial judge noted for the record that the objection to the chart concerned only the hearsay testimony contained therein.  Watts raised no point of error on direct appeal concerning the trial court's rulings on the Mockeridge testimony.  These issues were first raised in his state habeas petition and were held to be procedurally barred.

Based on these events, the federal district court ruled correctly that federal courts are bound by the state courts' determination that Watts's claim concerning the limitation of Mockeridge's testimony is procedurally barred.  "This Circuit has held that the Texas contemporaneous-objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar."  Parr v. Quarterman, 472 F.3d 245, 253 (5th Cir. 2006) (quoting Dowthitt v. Johnson, 230 F.3d 733, 752 (5th Cir. 2000)) (internal quotation

---

[2]The defense made no attempt to call witnesses, such as Watts's family members or acquaintances, who possessed personal knowledge of Watts's traumatic childhood or any other purportedly mitigating evidence contained in the summary chart.

marks omitted). Watts made no attempt to contemporaneously object to the trial court's evidentiary rulings at trial or on direct appeal and thereby failed to preserve his claim of constitutional error. He raised a point of error regarding the trial court's evidentiary ruling for the first time in his state habeas application, which, under Texas law, is too late. Federal habeas review is barred here because Watts's violation of the state procedural rule represents an independent and adequate basis to support the judgment. See Pippin v. Dretke, 434 F.3d 782, 792 (5th Cir. 2005); Rowell v. Dretke, 398 F.3d 370, 375 (5th Cir. 2005). No jurist of reason could find otherwise. This conclusion is dispositive for denial of COA.

Irrespective of procedural bar, however, Watts suggests that the trial court's evidentiary ruling amounts to error of a constitutional dimension because it allegedly led defense counsel to believe that instead of excluding only the hearsay portions of the summary chart, the trial court had actually ruled that Mockeridge was entirely precluded from providing any expert testimony whatsoever. The state habeas court's findings of fact address this issue and explain that, whatever the particular wording the trial court used in overruling the state's objection, all parties understood the ruling to be confined only to the contents of the chart, and that it in no way limited Mockeridge's ability to offer any otherwise admissible expert opinion testimony. This rendition is obviously accurate, because immediately after the

8

ruling defense counsel returned to the same line of questioning establishing Mockeridge's professional background and status as an expert witness without objection from the state. Had defense counsel sincerely understood the trial judge's ruling to be a categorical bar to Mockeridge's offering any opinion testimony, there is no reason why counsel would have persisted in proving up Mockeridge's qualifications as an expert. The witness's ability to offer opinion testimony independent of the chart's hearsay statements was neither limited nor revoked by the trial judge's ruling, as the post-ruling behavior of both parties confirms. The federal court did not misconstrue the trial record, and the state courts made no unreasonable determination of relevant facts.

Further, Watts's contention that he was not required to contemporaneously object at trial because he submitted a post-trial bill of exceptions to the trial court, raises no reasonably debatable issue concerning the violation of his constitutional rights.[3] While the submission of mitigating evidence is highly relevant to the assessment of a capital defendant's moral

---

[3]Watts cites our decision in Mayo v. Lynaugh, 893 F.2d 683, 686-88, 690 (5th Cir. 1990), for the proposition that the submission of mitigation evidence in the form of an offer of proof preserves a claim of trial error even without a contemporaneous objection. Mayo says nothing of the sort. Mayo involved the fact-specific question whether procedural default attached to petitioner's untimely asserted Penry claim when the state failed to raise the procedural-default issue below. Id. at 686. Watts has neither asserted a Penry claim, nor can he suggest that the state failed to argue that he had procedurally defaulted on challenging the trial court's evidentiary ruling. Mayo is inapposite.

blameworthiness, see, e.g., Rompilla v. Beard, 545 U.S. 374, 377-79, 125 S. Ct. 2456, 2460-62 (2005), the contemporaneous-objection requirement is not abrogated in the context of capital sentencing, nor are the rules of evidence or the prohibition against hearsay. See, e.g., McGinnis v. Johnson, 181 F.3d 686, 693 (5th Cir. 1999), cert. denied, 528 U.S. 1125, 120 S. Ct. 955 (2000). Thus, the state courts' evidentiary rulings are not inherently suspect. Even if they were incorrect, however, federal habeas relief may be granted only under exceptional circumstances when the evidentiary ruling violates a specific constitutional right or is so egregious that it renders the trial fundamentally unfair. Brown v. Dretke, 419 F.3d 365, 376 (5th Cir. 2005), cert. denied, __U.S.__, 126 S. Ct. 1434 (2006); McGinnis, 181 F.3d at 693 (ruling limiting expert psychologist's hearsay testimony during penalty phase did not violate due process because the exclusion did not render the trial "fundamentally unfair"). A due process violation arises only when the excluded evidence "is a crucial, critical, highly significant factor in the context of the entire trial." Johnson v. Puckett, 176 F.3d 809, 821 (5th Cir. 1999).

Watts's sole evidentiary contention is that the trial court stifled his ability to present Mockeridge's full range of "expert" opinion. Watts does not challenge the accuracy of the ruling that he could not present as fact the hearsay statements underlying Mockeridge's conclusions. So understood, this complaint does not concern crucial or critical evidence within the meaning of

10

the due process clause.  Watts has made no showing that jurists of reason would find merit in his constitutional claim or that our refusal to address his claim will result in a fundamental miscarriage of justice.  See Coleman v. Thompson, 501 U.S. 722, 749-50, 111 S. Ct. 2564, 2565 (1991).

For these reasons, we conclude that Watts's failure to timely assert his evidentiary objection in state court bars what otherwise would be a substantively unmeritorious claim of constitutional error.  Watts's request for COA is DENIED.