IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 90-2124

_____

HAROLD AMOS BARNARD, JR.,

                        Petitioner-Appellant,

v.

JAMES A. COLLINS, Director, Department of
Criminal Justice, Institutional Division,

                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

(April 3, 1992)

Before KING, JOLLY and SMITH, Circuit Judges.

KING, Circuit Judge:

    Harold Amos Barnard, Jr. appeals the district court's
dismissal of his petition for a writ of habeas corpus.  He argues
that the district court erred in rejecting his contention that
the Texas capital sentencing statute as applied in his case
unconstitutionally prevented the jury from fully considering and
giving effect to all of the mitigating evidence he presented
during the conviction and sentencing phases of his trial.
Finding no error, we affirm the district court's denial of habeas
relief and vacate the stay of execution.

## I.   BACKGROUND

On June 6, 1980, Barnard killed sixteen-year-old Tuan Nguyen during the robbery of a convenience store in Galveston, Texas.[1] A jury convicted Barnard of capital murder on April 1, 1981. After a punishment hearing, the jury affirmatively answered the three special issues submitted pursuant to Texas law, and on April 6, 1981, the court imposed a death sentence.

The Texas Court of Criminal Appeals affirmed Barnard's conviction on April 8, 1987.  Barnard v. State, 730 S.W.2d 703 (Tex. Crim. App. 1987), cert. denied, 485 U.S. 929 (1988). Barnard filed a petition for a writ of habeas corpus in the state trial court on October 31, 1988.  On November 22, 1988, the trial court entered its findings of fact and conclusions of law and recommended denial of the writ.  The Court of Criminal Appeals found the trial court's findings and conclusions to be supported by the record and denied the writ on January 6, 1989.

The trial court rescheduled Barnard's execution for March 14, 1989.  On February 21, 1989, Barnard filed a petition for habeas corpus relief and an application for stay of execution in United States district court.  The district court stayed the execution pending its consideration of Barnard's petition.

On December 12, 1989, the district court entered a final judgment dismissing the petition for a writ of habeas corpus and lifting the stay of execution.  Barnard timely filed a motion to

---

[1] For a more detailed recitation of the facts, see Barnard v. State, 730 S.W.2d 703 (Tex. Crim. App. 1987), cert. denied, 485 U.S. 929 (1988).

alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), which the district court denied.  After Barnard filed a notice of appeal, the district court granted a certificate of probable cause and entered a stay of execution on February 7, 1990.  This appeal followed.

On appeal, Barnard contends that the district court erred in rejecting his claims that (1) the Texas death sentencing statute prevented the jury in his case from considering and giving effect to his mitigating evidence in violation of the Sixth and Eighth Amendments to the United States Constitution; (2) the court's instruction on temporary insanity caused by intoxication prevented the jury from giving any mitigating consideration to this evidence unless Barnard proved that he was so intoxicated that he was insane at the time of the offense; (3) evidence of his good character, including evidence of his carpentry skills, work history, and familial responsibility and support, was not adequately treated within the special issues; and (4) Barnard received ineffective assistance of counsel.  We consider each of these claims below.

## II.  ANALYSIS

### A.  Standard of review

In considering a federal habeas corpus petition presented by a petitioner in state custody, federal courts must accord a presumption of correctness to any state court factual findings. See 28 U.S.C. § 2254(d).  We review the district court's findings of fact for clear error, but decide any issues of law de novo.

Humphrey v. Lynaugh, 861 F.2d 875, 876 (5th Cir. 1988), cert. denied, 490 U.S. 1024 (1989).

B. Penry claim

Barnard first contends that the Texas capital sentencing statute, as applied in his case, violated the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by failing to provide a vehicle by which Barnard's jury could properly consider and give effect to the substantial mitigating evidence he presented at trial. Barnard argues that the Texas capital sentencing statute[2] unconstitutionally limited the jury's consideration of two types of mitigating evidence that he presented at trial: (1) his head injury, evidence of permanent characteristics and disabilities stemming from his troubled childhood, and his drug and alcohol abuse; and (2) evidence of his good character, including evidence of his carpentry skills, work history, and familial responsibility and support. Barnard maintains that, under the narrow focus of the special issues, no

---

[2] Pursuant to the version of Texas Code of Criminal Procedure Article 37.071 in effect at the time of Barnard's sentencing, the trial court instructed the jury to consider the following special issues:

  1. Was the conduct of the Defendant that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased would result?

  2. Is there a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society?

  3. Was the conduct of the Defendant in killing the deceased unreasonable in response to the provocation, if any, by the deceased?

4

means existed by which the jury could give meaningful expression to this evidence and vote for life as mandated by the Supreme Court in Penry v. Lynaugh, 492 U.S. 302 (1989).

The district court refused to review the merits of Barnard's contention that the Texas death sentencing statute was unconstitutional as applied[3] in his case, concluding that Barnard had procedurally defaulted this claim.  In making this ruling, the district court observed that both the trial court and the Court of Criminal Appeals found on state habeas review that Barnard was barred under state law from complaining of the trial court's failure to give additional jury instructions on mitigating evidence because he failed to request such a special instruction.  The district court determined that the state habeas court unambiguously relied on the state procedural default doctrine in its dismissal, and that Barnard demonstrated neither good cause for his failure to comply with state court procedures nor actual prejudice resulting from the alleged constitutional violation.

Over two years have elapsed since the district court rested its decision on the procedural default doctrine.  Since then, the Texas Court of Criminal Appeals has clarified the state's position on whether a habeas petitioner has defaulted on a Penry claim.  Selvage v. Collins, 816 S.W.2d 390 (Tex. Crim. App. 1991), explained that a Penry claim is preserved even if the

---

[3] Barnard has abandoned his facial challenge to the Texas death penalty statute brought before the district court.

petitioner failed to request an instruction on mitigating evidence or object to the instructions given at trial.  Id. at 392.  However, a petitioner cannot base a Penry claim on mitigating evidence that could have been, but was not, proffered at trial.  May v. Collins, 904 F.2d 228, 232 (5th Cir. 1990), cert. denied, 111 S. Ct. 770 (1991); DeLuna v. Lynaugh, 890 F.2d 720, 722 (5th Cir. 1989); see also Ex parte Goodman, 816 S.W.2d 383, 386 n.6 (Tex. Crim. App. 1991) (in dicta, refusing to consider arguments based on tactically withheld Penry evidence, unless the appellant makes a contemporaneous offer of proof or bill of exception detailing what mitigating evidence is being withheld).  With these constraints in mind, we examine whether Barnard's challenge to the application of the Texas sentencing statute in his case warrants relief.

Although the Supreme Court has upheld the constitutionality of the Texas capital sentencing scheme, see Jurek v. Texas, 428 U.S. 262, 272 (1976) (opinion of Stewart, Powell & Stevens, JJ.), it has found that under certain circumstances, the statutory special issues must be augmented by jury instructions to preserve the constitutionality of the statute's application.  In Penry, the Supreme Court held that a Texas jury could not give effect to mitigating evidence of mental retardation and an abused childhood through the special issues absent instructions informing the jury that it could consider and give effect to this evidence by refusing to impose the death penalty.  492 U.S. at 328.  The Court ordered resentencing in Penry's case because without such

6

an instruction, "the jury was not provided with a vehicle for expressing its 'reasoned moral response'" to his mitigating evidence in its sentencing decision.  Id.

In Graham v. Collins, 950 F.2d 1009 (5th Cir. 1992) (en banc), petition for cert. filed Mar. 9, 1992 (No. 91-7580), this court recently construed Penry to indicate that special jury instructions are required only when the "major mitigating thrust of the evidence is beyond the scope of all the special issues." Id. at 1027.  We determined that Graham's evidence of his youth as a mitigating factor found adequate expression through the second special issue.  Graham reasoned that because youth is a transitory condition,

> whatever is mitigating about youth tends to lend support to a "no" answer to the second special issue, and its tendency to do so is essentially proportional to the degree to which the jury concludes such factors were influential in the defendant's criminal conduct.  The greater the role such attributes of youth are found to have played in the defendant's criminal conduct, the stronger the inference that, as his youth passes, he will no longer be a danger to society.

Id. at 1031.  The majority distinguished evidence of transitory conditions, such as youth, from evidence of "uniquely severe permanent handicaps with which the defendant was burdened through no fault of his own," such as mental retardation, organic brain damage and an abused childhood.  Id. at 1029.  We turn now to Barnard's contention that the mitigating evidence he presented at trial differs materially from the type of evidence found unproblematic in Graham and that, as a consequence, the lack of

7

special jury instructions rendered his proceeding unconstitutional.

Barnard argues that because the evidence presented during his trial raised an issue with regard to his head injury and its effects, the jury could not have expressed the full mitigating force of this evidence within the special issues. At trial, Barnard testified that several months before he committed the crime, his son-in-law beat him in the head with a tire iron. Barnard's friend, Marie Farquhar,[4] and his mother, Maude Barnard, testified to the apparent severity of the wounds resulting from the beating. Barnard's mother also stated that Barnard was unable to work for four or five months and that he was less helpful around the house after the beating. She further stated that since the beating, she thought he needed psychiatric help. On cross-examination, she also told of an occasion after the beating when she accompanied Barnard to a hospital so that he would get a psychiatric examination, recalling that he left the hospital the same day, apparently without receiving treatment.

Barnard did not introduce expert testimony relating to his psychological disorders during his capital trial.[5] Nor does the

---

[4] Farquhar was also a licensed vocational nurse.

[5] Barnard first filed a psychological evaluation, prepared by a psychologist in October 1988, with his petition for habeas corpus relief in the district court. The report reveals that, in addition to the attack with the tire iron, Barnard suffered a serious head injury from a car accident when he was seventeen years old. The report also indicates that Barnard suffers from extreme paranoia and delusional ideation and that, since his incarceration, he has consistently been diagnosed as having a paranoid disorder with possible schizophrenia. The psychologist

8

record contain any affirmative evidence of brain damage.  The evidence of the beating, without more, is insufficient to support a <u>Penry</u> claim.  The evidence must be able to raise an inference "that the crime is attributable to the disability." <u>Graham</u>, 950 F.2d at 1033.  Here, there is no evidence that the physical trauma from the blows caused Barnard to suffer from mental impairment, or that his criminal actions were attributable to mental impairment.  Barnard cannot rely on his mother's inexpert speculation concerning Barnard's mental condition to demonstrate a <u>Penry</u>-type disability.  A juror would be compelled to share this speculation to make such a finding.  <u>See</u> <u>Wilkerson v. Collins</u>, 950 F.2d 1054, 1061 (5th Cir. 1992) (refusing to consider claim based upon conjecture rather than proof). Therefore, Barnard's claim is without merit.

Barnard further contends that, in the absence of a special instruction, the jury was precluded from expressing the full mitigating potential of his evidence of a troubled childhood. Testimony during Barnard's trial revealed that his parents divorced when he was four years old and that he lived alone with his mother until he was thirteen.  His father was absent from his life during this period.  At age thirteen, Barnard was sent to live with his father, but had difficulties with him and eventually lived with an uncle.  Barnard's mother testified that

_____

was unable to conclude that Barnard was afflicted with paranoid delusions at the time he committed the capital offense.  Because Barnard did not present this evidence at trial, we cannot consider it now.  <u>See</u> <u>May v. Collins</u>, 904 F.2d 228, 232 (5th Cir. 1990), <u>cert. denied</u>, 111 S. Ct. 770 (1991).

9

she had been in a mental hospital four times, but specified the approximate date of her institutionalization for only one occasion, which apparently occurred after Barnard was eighteen years old.[6]  Barnard did not offer any affirmative evidence to show that his mother received institutional care during his childhood.  Nor did he attempt to show that his alcohol and drug use or any mental impairment or psychological problem was attributable to his childhood experiences.

We reject Barnard's attempt to portray this testimony as mitigation evidence of permanent characteristics and disabilities stemming from his troubled childhood.  Although the Graham majority observed that a defendant who introduced evidence of the adverse effects of a troubled childhood might well raise a Penry issue, in this case, as in Graham, there was no evidence that these childhood experiences had any psychological effect on Barnard.  Graham, 950 F.2d at 1033.  Accordingly, we find no substantial evidence that Barnard's "criminal conduct was 'attributable to a disadvantaged background, or to emotional and mental problems[.]'" Id. (quoting Penry, 109 S. Ct. at 2947).

Nor are we convinced by Barnard's efforts to characterize the record as raising the issue of an addictive disorder.  The scattered testimony recounting Barnard's evidently frequent episodes of heavy alcohol consumption, alcohol intoxication and marijuana use does not demonstrate that the episodes were

---

[6] Maude Barnard noted that she retired from her job when she had a nervous breakdown in the 1960s.  Barnard was eighteen years old in 1961.

attributable to a permanent handicap.  Although the evidence

showed that Barnard was intoxicated at the time of the offense,

"voluntary intoxication is not the kind of 'uniquely severe

permanent handicap[] with which the defendant was burdened

through no fault of his own' that requires a special instruction

to ensure that the mitigating effect of such evidence finds

expression in the jury's sentencing decision."  Cordova v.

Collins, 953 F.2d 167, 170 (5th Cir. 1992) (quoting Graham, 950

F.2d at 1029).  A juror who concluded that Barnard suffered from

alcoholism or drug addiction would have necessarily relied solely

on speculation to reach that conclusion.  Accordingly, Barnard

cannot prevail on this claim.  See Wilkerson, 950 F.2d at 1061.

Barnard alternatively argues that the jury instruction on

his intoxication at the time of the crime prevented the jury from

giving any mitigating consideration to this evidence unless

Barnard proved that he was so intoxicated that he was insane at

the time of the offense.[7]  This instruction, he contends, did not

---

[7] During the punishment phase of Barnard's trial, the court
gave the following instructions to the jury:

> You are instructed that under our law neither
> intoxication nor temporary insanity of mind
> caused by intoxication shall constitute any
> defense to the commission of crime.  Evidence
> of temporary insanity caused by intoxication
> should be considered in mitigation of the
> penalty attached to the offense.
>
> By the term "intoxication" as used
> herein is meant disturbance of mental or
> physical capacity resulting from the
> introduction of any substance into the body.
>
> By the term "insanity" as used herein,

11

allow a juror who found that Barnard acted deliberately and was not temporarily insane at the time of the offense to give mitigating effect to Barnard's evidence of intoxication even though the juror also found that the intoxication diminished Barnard's capacity and militated in favor of a life sentence. Therefore, he maintains that the mitigating thrust of this evidence of intoxication extended beyond the special issues.

In reviewing Barnard's state habeas petition, the trial court determined that Barnard's failure to request a special instruction or to object to this instruction at trial established a procedural bar to consideration of this claim. The Court of Criminal Appeals denied Barnard state habeas relief based on this determination. The district court concluded that the state habeas court's reliance on the state procedural bar was unambiguous and thus precluded it from reaching the merits of this claim pursuant to Harris v. Reed, 489 U.S. 255 (1989).

---

is meant, that as a result of the intoxication the defendant either did not know that his conduct was wrong or he was incapable of conforming his conduct to the requirements of the law he allegedly violated.

Now if you find from the evidence that the defendant, Harold Amos Barnard, Jr., at the time of the commission of the offense for which he is on trial, was laboring under temporary insanity as above defined, produced by voluntary intoxication, then you may take such temporary insanity into consideration in mitigation of the penalty which you attach to the offense, if any.

12

We agree with the district court that the state procedural bar precludes our review of this claim. In Selvage, the Texas Court of Criminal Appeals held that Selvage's Penry claim was not procedurally barred under Texas law because it was "an assertion of a right not previously recognized." 816 S.W.2d at 391. This rationale does not pertain here. In contrast to Penry, Barnard does not contend that the Texas special issues prevented the jury from considering Barnard's evidence of voluntary intoxication; he asserts that the court's erroneous instruction prevented the jury from giving full mitigating effect to his evidence of voluntary intoxication. Since a jury can express the mitigating force of evidence of voluntary intoxication through the Texas special issues, Barnard's failure to object to the additional instruction on temporary insanity resulted in the state procedural default of this claim.[8]

In his final Penry claim, Barnard argues that evidence of his good character, including evidence of his carpentry skills, work history, and familial responsibility and support[9] fell

---

[8] At the time of Barnard's trial, it was already well established that a capital sentencing statute must allow the sentencer to consider "as a mitigating factor any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978) (emphasis omitted); see also Jurek, 428 U.S. at 271 (opinion of Stewart, Powell & Stevens, JJ.).

[9] Three former employers testified for Barnard and stated that he was a competent worker and that they felt no fear for themselves or their families when he was present. Barnard also introduced evidence that he had worked to receive a General Equivalency Diploma, and that he spent time with his children and supported his family. Barnard's mother testified about how he

13

outside the scope of the second special issue. However, this court has concluded that evidence of good character does not require a special instruction under Penry. Graham, 950 F.2d at 1032. Since the principal mitigating thrust of good character evidence is to show that the defendant acted atypically in committing the capital crime, this evidence can find adequate expression under second special issue. Id. Specifically, the Graham majority observed that

> [u]nlike Penry evidence, which can reduce culpability where it is inferred that the crime is attributable to the disability while other similar offenders have no such "excuse," good character evidence provides no variety of "excuse." Further, absent some unusual indication of an essentially permanent adverse change in character (e.g., brain damage), to the extent that the testimony is convincing that the defendant's general character is indeed good it will also, to essentially the same extent, be convincing that he will not continue to be a threat to society.

Id. at 1033 (emphasis in original). Barnard, however, maintains that, unlike the good character evidence offered in Graham, the mitigating potential of his good character evidence is not to show that Barnard does not have the capacity for future violence. Rather, he contends, the evidence shows that his life should be spared despite his need to be placed in a controlled environment.

To the extent that Barnard asserts that a capital sentencer must be able to express the mitigating potential of evidence unrelated to a defendant's culpability or capacity for

_____

helped to support her financially and around the house.

14

rehabilitation, ample authority supports the contrary conclusion. See, e.g., Penry, 492 U.S. at 319 ("Underlying Lockett and Eddings is the principle that punishment should be directly related to the personal culpability of the defendant."); Tison v. Arizona, 481 U.S. 137, 149 (1987) ("The heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender."); Skipper v. South Carolina, 476 U.S. 1, 5 (1986) ("Consideration of a defendant's past conduct as indicative of his probable future behavior is an inevitable and not undesirable element of criminal sentencing[.]").  Further, Barnard portrays the qualitative effect of this mitigating evidence in a way that continues to bear on the question of Barnard's rehabilitative potential,[10] which is adequately addressed within the second special issue. Thus, we find no merit to this contention.

C.  Unconstitutionally vague terms

Barnard contends that the Texas capital sentencing statute was unconstitutionally applied to him because its operative terms are so vague and indefinite that they deprive the jury of meaningful guidance in its sentencing deliberations.  Without clarifying instructions on terms such as "probability" and "deliberateness," he argues, the statute unduly restricts the scope of the mitigating evidence which the jury can consider.  To support his contention, Barnard points out that in Penry, the

_____

[10] Barnard urges that the evidence demonstrates that he could be safely employed within a prison setting in a manner that benefitted society.

15

Supreme Court expressed doubt about whether the jury could give effect to Penry's mitigating evidence of mental retardation and child abuse "[i]n the absence of jury instructions defining the term 'deliberately.'" 492 U.S. at 323.

This claim is without merit. Both the Texas Court of Criminal Appeals and this court have held that the common meaning of the term "deliberately" is sufficiently clear to allow the jury to decide the punishment phase issues. Ellis v. Lynaugh, 873 F.2d 830, 839 (5th Cir.), cert. denied, 493 U.S. 970 (1989). In Penry, the Court was concerned that the trial court did not direct the jury to consider Penry's mental retardation in a way that bore fully on his moral culpability. The Court observed that "Penry's mental retardation was relevant to the question whether he was capable of acting 'deliberately,' but it also 'had relevance to [his] moral culpability beyond the scope of the special verdict questio[n].'" 492 U.S. at 322 (quoting Franklin v. Lynaugh, 108 S. Ct. at 2332) (alterations in original). Barnard has not presented any evidence that would require additional sentencing instructions pursuant to Penry. Thus, the doubt expressed in Penry does not apply to Barnard's case. See DeLuna, 890 F.2d at 722-23.

Moreover, Barnard fails to demonstrate that the jurors were confused about the meanings of the challenged terms "probability" and "society" as used in the second special punishment issue. In Jurek, the Supreme Court rejected the petitioner's contention that the second special issue was unconstitutionally vague. See

16

428 U.S. at 274-75 (opinion of Stewart, Powell & Stevens, JJ.); id. at 279 (White & Rehnquist, JJ. & Burger, C.J., concurring) ("the issues posed in the sentencing proceeding have a common-sense core of meaning and . . . criminal juries should be capable of understanding them").  We conclude that these terms "have a plain meaning of sufficient content that the discretion left to the jury was no more than that inherent in the jury system itself."  Milton v. Procunier, 744 F.2d 1091, 1096 (5th Cir. 1984), cert. denied, 471 U.S. 1030 (1985).

D.  Ineffective assistance of counsel

Finally, Barnard argues that he was denied effective assistance of counsel in violation of the Sixth Amendment. Specifically, he points out that his trial counsel (1) failed to have a psychiatric expert evaluate Barnard; (2) failed to conduct an adequate examination into Barnard's family history; (3) failed to obtain a medical examination to determine whether Barnard suffered from brain damage; and (4) allowed Barnard to testify in his own defense at trial.  These errors and omissions, Barnard contends, prejudiced his right to a fair trial.

We review an ineffective assistance of counsel claim under the two-prong standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See, e.g., Wilkerson, 950 F.2d at 1063. Under Strickland, a defendant must show

> [f]irst . . . that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show

17

> that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

Strickland, 466 U.S. at 687. We determine the reasonableness of the challenged conduct by viewing the circumstances at the time of that conduct. Id. at 690. Further, "[w]e must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." Wilkerson, 950 F.2d at 1065 (citing Strickland).

Barnard fails to demonstrate that his counsel would have reason to believe that Barnard suffered from a mental defect at the time of the offense or trial. Thus, he cannot sustain the argument that his counsel was ineffective for failing to employ experts to explore the psychological, medical or physical origins of Barnard's mental condition. Likewise, he does not show that counsel's investigation into Barnard's family background was unreasonably deficient. Counsel elicited testimony from Barnard's mother, who favorably described some of Barnard's personal characteristics to the jury. Barnard also fails to provide factual support for the allegations of childhood neglect that he urges would have come to light had counsel conducted a more thorough investigation. As such, he fails to show that his counsel performed in a constitutionally deficient manner.

18

Moreover, Barnard does not demonstrate that his trial counsel's decision to waive Barnard's Fifth Amendment right not to testify constitutes ineffective assistance of counsel. Barnard argues that this waiver resulted in the extraction of incriminating testimony, some of which was elicited by defense counsel himself, concerning Barnard's participation in and preparation for the crime. However, as the district court observed, he has not demonstrated that trial counsel neglected to weigh the possible harm from potentially incriminating testimony against the need for Barnard to testify in favor of the defense theory of his case. Nor does Barnard show that but for this alleged error, the result of the proceeding would have been different. The jury already had considerable evidence before it to find that Barnard planned to participate and acted deliberately in committing the crime.

Since Barnard's allegations do not satisfy the <u>Strickland</u> test, we find no merit to this claim.[11] In addition, we reject Barnard's assertion that he is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel to make findings of fact as to whether counsel's decisions were grounded in a deliberate trial strategy. The reliance of the trial court and the federal district court on this rationale in denying

---

[11] Barnard makes other conclusory allegations that his counsel rendered ineffective assistance. In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we conclude that there is no merit to these additional contentions. <u>See</u> <u>Knighton v. Maggio</u>, 740 F.2d 1344, 1349 (5th Cir.), <u>cert. denied</u>, 469 U.S. 924 (1984).

relief derived from a legal presumption dictated by <u>Strickland</u>,

see 466 U.S. at 690, not from any unsubstantiated speculation on

the record.  Because Barnard fails to present allegations

sufficient to overcome this presumption, we conclude that he is

not entitled to an evidentiary hearing.  <u>See</u> <u>Ellis</u>, 873 F.2d at

840.[12]

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the

district court and VACATE the stay of execution.

---

[12] In his supplemental brief, Barnard argues for the first
time that the prosecution's closing argument violated his
constitutional rights because it erroneously permitted the jury
to presume from the mere act of shooting that Barnard intended to
kill the victim.  As Barnard did not present this argument in his
opening brief, we conclude that it is waived.  <u>See</u> <u>United States
v. Miller</u>, 953 F.2d 866, 874 (5th Cir. 1992); <u>United States v.
Mejia</u>, 844 F.2d 209, 214 n.1 (5th Cir. 1988).  Moreover, because
Barnard did not raise this claim either before the trial court on
state habeas review, or before the federal district court, we
cannot consider the claim here.