IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-1354
_____

CLIFTON CHARLES RUSSELL,

Petitioner-Appellant,

versus

JAMES A. COLLINS, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(August 13, 1993)

BEFORE KING, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

In this petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241, 2245, Petitioner-Appellant Clifton Charles Russell appeals the district court's denial of his habeas petition. On appeal, Russell challenges the constitutionality of his sentencing proceeding which culminated in imposition of the death penalty. After careful consideration of the issues raised by Russell, we discern no reversible error and affirm.

I

FACTS AND PROCEEDINGS

Russell was convicted of the capital murder of Hubert Otha Tobey, killed in the course of a robbery. After Russell and a

companion robbed Tobey of his money and his automobile, Russell struck him over the head with a large piece of concrete and inflicted numerous knife wounds as well, including one to the jugular vein. Russell and two other men, Michael Wicker and William Battee, Jr. subsequently were arrested outside a mall for public intoxication. Police traced the car and connected it to Tobey, whose body had been discovered by then. The police then seized Battee's tennis shoes and Russell's pants, underwear, shirt, and shoes, all of which had blood on them. The car's interior also contained blood stains.

Russell was tried and convicted for capital murder. During the sentencing phase of the trial, the state introduced evidence regarding Russell's poor reputation in the community, his tendency towards violence making him dangerous to society, and opinion testimony suggesting that he was not a likely candidate for rehabilitation.

In response, Russell presented five witnesses, four of whom were members of various church organizations that opposed the death penalty per se. In addition, Russell's mother, Jo Ann Lacy, testified to Russell's troubled childhood and incidents of violence against him. Specifically, she recounted an incident during which Russell's stepfather beat him severely with a baseball bat in response to Russell's allegations that the shooting of his mother nine months earlier by his stepfather had not been accidental. Russell required surgery to mend his broken facial bones. Mrs. Lacy also testified that Russell did not meet his biological father

2

until he was seven and never had a real father figure. Finally, she stated that Russell had suffered as a child because of his mixed racial parentage.

Despite the testimony of Mrs. Lacy, the jury affirmatively answered the first two special issues submitted pursuant to Texas law: whether the defendant acted deliberately, and whether he posed a future danger to the community. Accordingly, the judge sentenced Russell to death. Russell's conviction and sentence were automatically appealed to the Texas Court of Criminal Appeals, which affirmed the conviction and sentence. Russell next pursued his state habeas remedy, which was denied. Finally, Russell filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Texas and received an evidentiary hearing. Russell's proceedings were stayed, however, pending the Supreme Court's consideration of Penry v. Lynaugh.[1] This stay was eventually lifted and the magistrate judge entered his findings, conclusions, and recommendation, followed by supplemental findings. The district court adopted the report, dismissing the petition and withdrawing the stay of execution. Russell timely appealed.

## II

## ANALYSIS

A. Standard of Review

"In considering a federal habeas corpus petition presented by a petitioner in state custody, federal courts must accord a

---

[1] 492 U.S. 302 (1989).

presumption of correctness to any state court factual findings. . . . We review the district court's findings of fact for clear error, but decide any issues of law de novo."[2] Evaluation of a petitioner's constitutional challenge to the Texas special issues as applied to him is, of course, an issue of law.

B. Penry Claim

In his first challenge to the sentencing proceedings, Russell relies on the Supreme Court's decision in Penry. In that case, the Court ruled that the Texas special interrogatories did not allow the jury to consider relevant mitigating evidence of mental retardation and childhood abuse and therefore failed to give an "individual assessment of the appropriateness of the death penalty."[3] Penry, Russell claims, dictates that the district court erred in not granting a special instruction for his mitigating evidence of his youth and troubled childhood.

The state insists, to the contrary, that Russell's claim must fail because Penry clearly states that a special instruction is required "upon request." Yet, the state urges, Russell never sought a special instruction, and therefore he cannot now complain of the district court's error. This argument ignores our holding in Mayo v. Lynaugh,[4] in which we explained that Penry provides little support for the proposition that a defendant must

---

[2] Barnard v. Collins, 958 F.2d 634, 636 (5th Cir. 1992)(citations omitted); see 28 U.S.C. § 2254(d).

[3] Penry, 492 U.S. at 319.

[4] 893 F.2d 683 (5th Cir. 1990).

4

contemporaneously object to or request additional jury instructions.[5] "Although the Court's description of the rule sought by Penry involved the request for jury instructions, discussion of the important limitations to the holding left unmentioned the role of the objections or requests for instructions, and several statements of the holding likewise omitted any such qualification."[6]

The opinion in Mayo also noted, however, that this did not preclude the failure to object or request additional instructions from operating as a procedural bar under state law.[7] Since the decision in Mayo, however, we have certified to the Texas Court of Criminal Appeals the question "whether [a] petitioner['s] . . . claim under Penry v. Lynaugh . . . is presently procedurally barred under Texas law."[8] The court answered the question in the negative, holding that failure to object contemporaneously in pre-Penry cases does not create a state procedural bar as the decision in Penry "`constituted a substantial change in the law . . . and there being abundant Texas precedent demonstrating that the holding amounts to a right not previously recognized.'"[9]

---

[5] Id. at 689.

[6] Id. (citations omitted).

[7] Id. at 690 (citing Fierro v. Lynaugh, 879 F.2d 1276, 1281-82 (5th Cir. 1989)).

[8] Selvage v. Collins, 897 F.2d 745, 745 (5th Cir. 1990).

[9] Selvage v. Collins, 816 S.W.2d 390, 392 (Tex. Crim. App. 1991)(quoting Black v. State, 816 S.W.2d 350, 374 (Tex. Crim. App. 1991)).

In any event, the state does not argue that Russell's claim is procedurally barred under state law, but insists that it is barred under Penry, which the state interprets erroneously as requiring a request for instructions. Based on Mayo, we reject the government's claim that Penry imposes a procedural bar when a pre-Penry defendant fails to request a specialized instruction.

As Russell is not procedurally barred from asserting the alleged error, we proceed to the merits of his Penry claim. In that case, the Supreme Court reiterated its holding in Jurek v. Texas[10] that the constitutionality of the Texas statute "turns on whether the enumerated questions allow consideration of particularized mitigating factors."[11] Consideration of relevant mitigating evidence is required because "`the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime.'"[12] Therefore, the sentencer must "make an individualized assessment of the appropriateness of the death penalty" and treat the defendant as a "`uniquely individual human bein[g].'"[13] In making this individualized assessment, the sentencer must consider evidence about the defendant's background and character "`because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to

---

[10] 428 U.S. 262 (1976).

[11] Id. at 272.

[12] Penry, 492 U.S. at 319 (quoting California v. Brown, 479 U.S. 538, 545 (1987)(emphasis in the original)).

[13] Id.

6

a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.'"[14]

Penry stands apart from the cases that preceded[15] and followed it[16] because of its ultimate conclusion: the Texas special issues did not give effect to petitioner's compelling evidence of mental retardation and abused childhood that mitigated his moral culpability for his crime. Penry did not invalidate the Texas sentencing scheme, and subsequent Supreme Court cases have refused to extend Penry to cover less serious mitigating evidence.[17]

Russell points to three types of mitigating evidence in support of his Penry claim: (1) his youth (he was age 18 at the time of the homicide); (2) his troubled childhood; and (3) a beating he suffered in his late teens at the hands of his step-father. We address each type of evidence in turn.

1. In Johnson v. Texas,[18] the Supreme Court made clear that the mitigating factor of a defendant's age is within the "effective reach" of the second special issue. Thus, such evidence is not

---

[14] Id.

[15] Franklin v. Lynaugh, 487 U.S. 164 (1988)(plurality opinion); Jurek, 428 U.S. at 262.

[16] Graham v. Collins, 506 U.S. ___, 113 S.Ct. 892, 122 L. Ed. 2d 260 (1993); Johnson v. Texas, 61 U.S.L.W. 4738 (U.S. June 24, 1993)(No. 92-5653); Graham v. Collins, 950 F.2d 1009 (5th Cir. 1992)(en banc).

[17] See, e.g., Johnson, 61 U.S.L.W. 4738.

[18] 61 U.S.L.W. 4738.

7

problematic under Penry.[19]

2.  Russell's argument that his jury was unable to give proper mitigating weight to evidence of his troubled childhood is barred under the non-retroactivity doctrine announced by the Supreme Court in Teague v. Lane.[20]  In Graham v. Collins,[21] the Supreme Court was presented with an essentially identical claim raised by a habeas petitioner--a Penry-type claim based on evidence of a non-abusive but turbulent childhood--and held that the petitioner's claim proposed a "new rule" under Teague.[22]  Russell has presented no evidence that his troubled childhood rose to the required level of abusiveness.

3.  The final type of evidence that Russell offered during the punishment phase described a single episode of violenceSQa severe beating in the face with a baseball bat by a stepfather who then attempted unsuccessfully to shoot Russell.  Both incidents occurred on the same day when Russell was in his late teens.[23]  Russell

---

[19] Although in Graham, 113 S. Ct. at 892, the Supreme Court held that a habeas petitioner's Penry-type claim based on his youth was barred under the non-retroactivity doctrine announced by the Court in Teague v. Lane, 489 U.S. 288 (1989), the Court has subsequently held, in a direct appeal case, in which Teague was not applicable, that such a claim has no merit. See Johnson, 61 U.S.L.W. 4738.  Thus, we see little need to invoke the Teague doctrine when the merits of a "new rule" have been reached and squarely rejected by the Court.

[20] 489 U.S. at 288.

[21] 113 S. Ct. at 892.

[22] See Graham, 113 S. Ct. at 902; but see id. at 917, 920 n.2 (Souter, J., joined by Blackmun, Stevens & O'Connor, dissenting).

[23] The record is not clear whether Russell was 17 or 18.

8

attempts to characterize this occurrence as "child abuse" similar to the type introduced by the capital defendant in Penry. We disagree. Russell's beating occurred when he was in his late teens, possibly when he was legally an adult. But child-abuse, as it is generally understood, occurs when a juvenile is of such tender years that a violent beatingSQor, more commonly, repeated beatingsSQby an adult would have the tendency to affect the child's moral capacity by predisposing him or her toward committing violence. As the evidence here is significantly distinguishable from that offered in Penry, the Supreme Court's holding in Penry regarding mitigating evidence of child abuse is not implicated.

More to the point, whether evidence of the violence inflicted on Russell by his stepfather was in the "effective reach" of jurors under the special issues is not relevant;[24] the Eighth Amendment is not implicated in the first place. The Supreme Court has repeatedly held that there are three basic categories of constitutionally relevant mitigating evidence--that which is relevant to a defendant's "background," "character," or the "circumstances of the crime."[25] Russell's evidence of the violence inflicted by his father does not fall under any one of these three rubrics. Russell necessarily argues that his evidence falls under the "background" rubric. We disagree.

Under precedent in this circuit, evidence of a defendant's background is constitutionally relevant mitigating evidence only if

---

[24] See Graham, 113 S. Ct. at 902.

[25] Penry, 492 U.S. at 328.

9

the crime committed by the defendant is in some sense "attributable" to that background.[26] While "attribution" does not require a precise nexus between such background evidence and the crime, at a minimum the evidence must permit a rational jury to "infer that the crime is attributable," at least in part, to the defendant's background.[27] Albeit a close call, the evidence of the isolated episode of violence inflicted by Russell's stepfather does not permit such an inference. As noted, that incident did not occur during Russell's youth and was not indicative of a pattern or history of child abuse--at least according to the evidence offered during the punishment phase of Russell's trial.[28] Neither did Russell offer any evidence that the act of violence left him mentally or emotionally impaired in a manner that would permit a rational jury to infer that this single incident somehow made Russell more predisposed to commit a murder.[29] While, as a general proposition, a rational jury may infer that child abuse renders one less morally culpable for a violent crime,[30] the same cannot be said

---

[26] Graham, 950 F.2d at 1033 (citing Penry, 492 U.S. at 319).

[27] Barnard, 958 F.2d at 638 (quoting Graham, 950 F.2d at 1033).

[28] As noted, Russell's evidence of a troubled childhood did not include any evidence that he was physically abused. Rather, according to the evidence offered during the punishment phase, Russell never suffered any abuse until his late teens.

[29] Cf. Barnard, 958 F.2d at 638 (holding that a single head-beating suffered by an adult capital defendant, with no other evidence of any adverse effects, was not constitutionally sufficient to support a Penry claim).

[30] See Penry, 492 U.S. at 322; see also Santosky v. Kramer, 455 U.S. 745, 789 (1982) (Rehnquist, J., dissenting) ("It

10

for a single episode of physical abuse inflicted upon an adult. Thus, we reject Russell's Penry claim predicated on this evidence.

In sum, we conclude that there was no Eighth Amendment violation in this case. First, Russell's age at the time of the crime was cognizable under the second special issue. Second, his Penry-type claim based on mitigating evidence troubled childhood is barred under the Teague doctrine. Finally, evidence of a single episode of severe violence inflicted by an adult on an adult, without more, does not qualify as constitutionally relevant mitigating evidence.

B. Undefined use of "deliberately"

Russell again relies on Penry to make his argument that the state court erred by not defining the word "deliberately" in the first special issue, which asks whether the defendant so acted. Russell recites the Court's reasoning that,

> [a]ssuming . . . that the jurors in this case understood "deliberately" to mean something more than that Penry was guilty of "intentionally" committing murder, those jurors may still have been unable to give effect to Penry's mitigating evidence in answering the first special issue.[31]

This quotation from Penry, however, rests on the understanding that the defendant had introduced mitigating evidence beyond the scope of the special issues. In the instant case, however, we have concluded that Russell did not present any mitigating evidence that

---

requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens.")

[31] Penry, 492 U.S. at 322.

was outside of the scope of the first special issue. Thus, the quoted language from Penry does not advance his claim.[32]

C. Exclusion of Juror

Russell next asserts that the district court erred in applying a presumption of correctness to the state court's finding that prospective juror Norman B. Scott was properly excluded from the jury. The transcript of the voir dire examination of Scott, reproduced in its entirety in Ex Parte Russell,[33] demonstrates that Scott strongly opposed the death penalty, that he "did not believe in" the death penalty, and that he "could take the law and the evidence, but when it come to imposing the death penalty, I don't think I could do it."[34] When asked whether there were any circumstances under which he could assign the death penalty, he replied possibly so if the murder victim was a small child, but he was not certain.[35]

Applying the test set forth in Witherspoon v. Illinois,[36] as clarified in Adams v. Texas[37] and Wainwright v. Witt,[38] the Texas Court of Criminal Appeals held that Scott had properly been discharged for cause as his testimony indicated that "his views on

---

[32] Barnard, 958 F.2d at 641.

[33] 720 S.W.2d 477, 477-81 (Tex. Crim. App. 1986).

[34] Id. at 479.

[35] Id. at 480-81.

[36] 391 U.S. 510 (1968).

[37] 448 U.S. 38 (1980).

[38] 469 U.S. 412 (1985).

12

the death penalty would have prevented or substantially impaired [his] performance as [a] juror[] in accordance with [the] instructions."[39]   The Court of Criminal Appeals' factual finding of juror bias is entitled to a presumption of correctness under 28 U.S.C. § 2254(d), and we find no reason why this presumption should not apply.[40]

D. Eighth Amendment

Russell's final assertion attacks the constitutional sufficiency of the evidence at the guilt-innocence stage of trial. He insists that there was no evidence to prove whether the murder was committed by him or by his co-defendant Battee (who received a sixty year sentence following a guilty plea), or by both of them acting together.  Absent this evidence, he insists, imposition of the death penalty violates his due process rights and the Eighth Amendment's proscription against cruel and unusual punishment.  In addition, he argues that the disparity between his death sentence and Battee's sentence of sixty years for the same offense is "an invidious discrimination" in violation of the Equal Protection Clause and violates the Eighth Amendment as a disproportionate sentence.

Enmund v. Florida[41] construed the Eighth Amendment as

---

[39] Ex Parte Russell, 720 S.W.2d at 484.

[40] In fact, the standard expressed in Wainwright "does not require that a juror's bias be proved with `unmistakable clarity.'" Wainwright, 469 U.S. at 426.  Rather, the determination is one best left to the trial judge. Id. at 426.

[41] 458 U.S. 782 (1982).

13

prohibiting the imposition of the death penalty against "one who neither took life, attempted to take life, nor intended to take life."[42]  Thus, it is impermissible to sentence a person to death solely on the basis of the acts of an accomplice; there must be evidence from which a jury could determine the petitioner's individual culpability.  The state insists that the first special instruction, which asks "whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result" allowed the jury to judge the evidence submitted against Russell.  The evidence submitted to the jury included Russell's possession of the car and the presence of a large amount of blood (compatible with the victim's) on Russell's clothing, consistent with someone who had brutally stabbed and beaten another.  In contrast, the state notes that Battee had blood only on his shoes.  Moreover, the state emphasizes that, in Russell's trial, it did not focus on Battee's intent to commit the crime, but on Russell's.  Thus, the state concludes, a reasonable jury could have inferred Russell's individual culpability for the murder; and the jury here had the opportunity to consider that question under the first special issue.  We agree.

In Jones v. Thigpen,[43] we remanded for resentencing a case in which the only evidence was involvement in the robbery and blood splattered shoes.  In the instant case, however, there are two

_____

[42] Id. at 786.

[43] 741 F.2d 805 (5th Cir. 1984)

14

important distinctions. First, the jury was properly instructed to consider the individual culpability of the defendant sentenced to death.[44] Second, the evidenceSQparticularly the fact that Russell's clothes (including his underwear) were soaked with bloodSQis very probative, as it is consistent with his inflicting the knife wounds himself. Consequently, we agree with the state's argument that the jury had the opportunity to consider Russell's individual involvement in the crime and, based on the evidence, reasonably could have determined his guilt.

Finally, we address Russell's claims involving the disparity of sentences, which are especially common when one defendant pleads guilty pursuant to a plea bargain and another defendant is tried by jury. It is well established that a prosecutor has discretion to enter into plea bargains with some defendants and not with others. Absent a showing of vindictiveness or use of an arbitrary standardSQneither of which Russell demonstratesSQthe prosecutor's decision is not subject to constitutional scrutiny.[45]


III

CONCLUSION

In this petition for a writ of habeas corpus, Russell challenges the imposition of the death penalty without a Penry-type

---

[44] See Skillern v. Estelle, 720 F.2d 839, 847-48 (5th Cir. 1983)(finding the same jury instruction cured an Enmund defect.).

[45] Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

15

instruction.  As he fails to demonstrate mitigating evidence outside the scope of the special issues, he does not qualify for the additional instruction.  Consequently, his second claimSQthat the absence of a jury instruction defining the word "deliberately" in the first special issue precluded the jury from considering his mitigating evidenceSQmust also fail.  We reject Russell's challenge to the exclusion of a potential juror on voir dire for his views on the death penalty.  Affording a presumption of correctness to the state court's finding that this exclusion was correct, we discern no reason why this presumption should not preclude Russell's claim.  Finally, we hold that the jury properly considered Russell's own individual culpability for the murder, permissibly inferring his guilt from the evidence presented, and we reject his claim that the disparity in the sentences imposed on him and on his accomplice violated the Due Process Clause, the Equal Protection Clause, or the Eighth Amendment.

For the foregoing reasons, the decision of the district court in refusing to grant the writ of habeas corpus is AFFIRMED.