**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 97-40556**

**JOSE ELIGIO DE LA CRUZ,**

**Petitioner-Appellant,**

**VERSUS**

**GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT**
**OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

Appeal from the United States District Court
For the Southern District of Texas

January 22, 1998

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

PER CURIAM:

Death row inmate Jose De La Cruz appeals the district court's final judgment denying De La Cruz' petition for writ of habeas corpus. We affirm.

I.

Nine years ago, Jose De La Cruz stabbed Domingo Rosas to death. The Friday night before the murder De La Cruz was a guest in Rosas' home and played a drinking game called "quarters" with Rosas until early Saturday morning. After leaving Rosas' home, De

La Cruz returned and killed Rosas in order to steal Rosas' television, VCR and stereo, a theft which yielded him approximately $80.

De La Cruz was observed Saturday morning driving around with a television in his car. Later that day, De La Cruz and his friend Michael Rios tried to sell a television to Michael's uncle, Joe Rios. Joe Rios declined but directed the pair to Ray and Irma Flores, who paid De La Cruz $80 for Rosas' belongings.

Later that night, De La Cruz was arrested for public intoxication. The arresting officer found De La Cruz staggering in the road, near a borrowed car that De La Cruz had run into a ditch. De La Cruz smelled like paint and seemed intoxicated. The officer placed De La Cruz in the patrol car. Inside the ditched car, the officer discovered a large blood-stained knife and a bottle of medicine prescribed to Rosas. When the officer returned to the patrol car, De La Cruz volunteered that the knife was his and repeatedly asked whether it would be returned. De La Cruz then announced at his booking that he was Domingo Rosas, the victim.

De La Cruz was released from jail, only to be arrested again a few days later. This time, De La Cruz entered Rosas' bank and attempted to withdraw money using Rosas' bank identification card. The bank, knowing that Rosas was dead, notified the police, and De La Cruz was arrested on suspicion of murder.

After his arrest for Rosas' murder, De La Cruz told his trial counsel that he did not commit the murder, but had delivered the stolen property to a "fence." Counsel explained that the state

2

might be willing to arrange a plea agreement if De La Cruz could recover the stolen property. Counsel also explained that any deal with the state would be unenforceable unless De La Cruz was being truthful about his role. Thereafter, and without finalizing any plea agreement, De La Cruz led police to some of the stolen property, which was recovered with De La Cruz' fingerprints. In addition to the stolen television, the state produced overwhelming evidence of De La Cruz' guilt at trial. For example, De La Cruz' clothing and the knife recovered from the ditched car were both stained with type-A blood, the same blood type as Rosas. Moreover, blood spatters on De La Cruz' pants indicated that the wearer had forcefully stabbed a seated victim. De La Cruz does not raise any issue of actual innocence.

De La Cruz' victim, Rosas, was disabled at the time he was murdered. Rosas had been pierced through the face and into the brain with a television antennae at the age of three. As a result, Rosas was partially paralyzed on his right side and was unable to walk well without a leg brace. Rosas was required to take daily medication to control spasms in his right side and suffered a mental impairment, having the mental and emotional constitution of a teenager. Finally, although Rosas was able to perform occasional work in his mother's restaurant, he collected social security benefits and required a significant amount of daily care from his sister and mother in order to survive. There is no dispute that the state relied heavily upon Rosas' disabled condition at both the guilt and punishment phase of De La Cruz' trial.

II.

In June 1988, De La Cruz was convicted and sentenced to death in Texas state court. Four years later, the Texas Court of Criminal Appeals affirmed his conviction. *De La Cruz v. State*, No. 70,502 (Tex. Crim App. Mar. 11, 1992). In October 1992, the Supreme Court denied De La Cruz' petition for writ of certiorari. *De La Cruz v. Texas*, 113 S. Ct. 149 (1992).

In December 1993, De La Cruz filed a petition for habeas corpus relief in Texas state court. In January 1995, De La Cruz amended his petition to reflect an investigation conducted by his present counsel. In February 1995, the trial court recommended that De La Cruz' petition be denied. The Court of Criminal Appeals adopted the trial court's recommendation and denied De La Cruz' petition in March 1995.

De La Cruz filed the instant petition for habeas corpus relief in federal district court in February 1996. The district court called two preliminary conferences to develop the issues presented in De La Cruz' petition. The district court suggested particular evidence that might be developed to support De La Cruz' claims and set deadlines for the submission of additional evidence. The district court also conducted an extensive evidentiary hearing with respect to some of De La Cruz' claims, receiving testimony from seven witnesses called by De La Cruz and six witnesses called by the state. The district court subsequently entered a lengthy and

4

detailed order explaining the reasons for its decision to deny relief.

De La Cruz requested that the district court issue a certificate of appealability, which was granted for certain issues. De La Cruz' petition was filed before the April 1996 effective date of the Antiterrorism and Effective Death Penalty Act. *See* **Lindh v. Murphy**, 117 S. Ct. 2059 (1997). We therefore construe the district court's grant of a limited certificate of appealability to be a grant of an unlimited certificate of probable cause. **Muniz v. Johnson**, __ F.3d __, ___, 1998 WL 1761 at *2 (5th Cir. Jan 2, 1998); **East v. Johnson**, 123 F.3d 235, 237 n.3 (5th Cir. 1997).

III.

De La Cruz appeals the district court's denial of his petition for habeas corpus, raising the same six issues he presented to the district court. First, De La Cruz maintains that the state deprived him of due process by unfairly and inaccurately portraying his victim as a "helpless cripple" deserving of the jury's mercy. *See* **Donnelly v. DeChristoforo**, 94 S. Ct. 1868 (1974). De La Cruz supports this argument with evidence that Rosas' physical abilities were slightly greater than as portrayed in argument to the jury, and that Rosas was convicted of robbery the year before he was killed. Second, De La Cruz argues that the state violated the dictates of **Brady v. Maryland**, 83 S. Ct. 1194 (1963) by failing to physically surrender the state's file on Rosas' prior robbery conviction. Third, De La Cruz claims that his trial counsel was

5

constitutionally deficient because counsel acted upon De La Cruz' story that he merely fenced Rosas' property without conducting an independent investigation, and because counsel allowed De La Cruz to lead police to the stolen property before a plea agreement was finalized. *See Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Fourth, De La Cruz contends that the arresting officer interrogated him about the blood-stained knife without advising De La Cruz of his right to remain silent. *See Miranda v. Arizona*, 86 S. Ct. 1602 (1966). Fifth, De La Cruz argues that he was incompetent to stand trial because he was a long-time abuser of spray paint inhalants and was under the influence of drugs at the time of his trial. *See Medina v. California*, 112 S. Ct. 2572 (1992). Sixth, De La Cruz claims that his conviction was unconstitutional because the jury was not given a definition for the term "reasonable doubt." De La Cruz also objects that the district court did not allow him to present additional evidence in the evidentiary hearing to support all six of his claims. We review the fact findings supporting the district court's denial of De La Cruz' federal habeas corpus petition for clear error. *Barnard v. Collins*, 958 F.2d 634, 636 (5th Cir. 1992). Questions of law are reviewed de novo. *Id*.

The Court has considered the arguments of the parties, as contained in the briefs and as presented at oral argument. The Court has reviewed the relevant portions of the state and federal components of the appellate record, including the transcripts of the conferences and the evidentiary hearing held in the district

court.   Finally, the Court has considered the district court's application of the relevant legal standards to De La Cruz' case. Having completed that review, the Court concludes that the district court's denial of De La Cruz' petition for writ of habeas corpus relief is without error.   De La Cruz' conviction and sentence of death were not secured in violation of the Constitution or federal law.   Accordingly, the district court's denial of De La Cruz' federal petition for writ of habeas corpus is in all respects AFFIRMED.